SWEETWATER PROPERTIES, SBC Investment Company and Blackjack Trust, Plaintiffs and Respondents,

v.

TOWN OF ALTA, Utah, municipal corporation, and Salt Lake County, Utah, Defendants and Appellants.

No. 17064.

Supreme Court of Utah.

Jan. 14, 1981.

---

Robert S. Campbell, James P. Cowley and Duane R. Smith of Watkiss & Campbell, Ted Cannon, Salt Lake County Atty., Robert B. Hansen, Atty. Gen., Salt Lake City, for defendants and appellants.

E. Craig Smay, Park City, David L. Gillette, Salt Lake City, for plaintiffs and respondents.

BUNNELL, District Judge:

The appellant, Town of Alta (hereinafter referred to as Alta), enacted an annexation "Policy Declaration" covering the property of the respondents, Sweetwater Properties, SBC Investment Company, and Blackjack Trust (hereinafter referred to as Sweetwater). Sweetwater filed suit in the district court seeking to have the court "issue its order declaring that the actions of the defendant (Alta) in adopting said Policy Dec-

laration are without authority, contrary to law, and void, and permanently enjoining defendant from adopting any further such declaration regarding plaintiffs' property."

The district court granted judgment to Sweetwater (1) declaring that the policy declaration of Alta was not in compliance with the provisions of the act under which it purports to have been enacted (Section 10–2–401 et seq., U.C.A. 1953, Supp. 1979) and therefore could be given no effect; (2) that the imposition of urban development restrictions upon the Sweetwater property under Section 10–2–418 as a result of the policy declaration would constitute a taking of property without just compensation or due process of law in violation of the United States and Utah Constitutions and that therefore said policy declaration is without authority, contrary to law and void; (3) permanently enjoined and restrained Alta from in any manner interfering with development of the Sweetwater property according to plans received in evidence and such modifications as may be approved by Salt Lake County. From said judgment, Alta has instituted this appeal.

Alta is a municipal corporation located in the upper reaches of Little Cottonwood Canyon in Salt Lake County. The Sweetwater property consists of 25 acres located contiguous to the west boundary of the Alta City limits. In June of 1979, Sweetwater announced that it intended to construct on the 25 acres 226 commercial condominium units with the usual recreational supporting facilities. In July of 1979, Alta, purporting to act under the provisions of Section 10–2–414,[1] drafted a policy declaration relative to the annexation of the Sweetwater property, noticed and held a public hearing as required under those sections of the law and on September 13, 1979, adopted by ordinance the policy declaration relative to the annexation of the Sweetwater property.

Sweetwater knew that Alta was discussing and considering the adoption of a policy declaration as to annexation as early as June 12, 1979, when a town meeting was held to discuss the matter and representatives of Sweetwater were present. Sweetwaters' representatives were also present at the public hearing on the proposed policy declaration that was held on September 13, 1979. On the same day that the policy declaration was adopted by Alta, September 13, 1979, Sweetwater, pursuant to previously filed applications, received from Salt Lake County a conditional use permit requiring that the Sweetwater project be constructed in stages and that each stage be separately and finally approved, and the county issued excavation and foundation permits for the first stage involving 15 units. Upon the enactment of the ordinance adopting the policy declaration, and in accordance with Section 10–2–418,[2] the county discontinued the review and permit process for the Sweetwater property and further development stopped. The action in the district court by Sweetwater was instituted on September 10, 1979, by the filing of a complaint that was then amended on September 24, 1979, asking for the relief as stated above.

It has been the law of this State for a considerable period of time and recently reaffirmed that the power and process of annexation is an inherent legislative function with which the judiciary will not ordinarily interfere.

> The power to change or modify municipal boundaries is a legislative function, and as long as the statutory process is complied with, the Courts will not generally interfere with the legislative prerogative, even though a person's property may become subject to a different jurisdiction, may be subject to different rules, obligations, or assessments. [*Freeman v. Cen-*

---

**1.** All section numbers refer to Utah Code Annotated 1953, as amended.

**2.** Section 10–2–418. "Urban Development Restrictions.—Urban Development shall not be

approved or permitted within one-half mile of a municipality in the unincorporated territory which the municipality has proposed for municipal expansion in its policy declaration, . . ."

*terville City, et al.*, Utah, 600 P.2d 1003 (1979).]

Until the present law was passed by the legislature, municipalities could not extend their boundaries except upon petition of a majority of the owners of the property to be annexed who also represented not less than one-third in value of that property. Cities in and of themselves had no right to initiate annexation.[3]

The legislature in 1979 changed this concept and adopted an entirely new policy and has now made provision for cities to annex contiguous areas, with certain limitations, and has authorized them to do so even though it may be contrary to the wishes of the property owners. Justification for granting such authority is expressed in the legislative policy declaration, Section 10–2–401, part of which is as follows:

The legislature hereby declares that it is the legislative policy that:

(1) Sound *urban* development is essential to the continued economic development of this state;

(2) Municipalities are created to provide *urban* governmental services essential for sound urban development and for the protection of public health, safety and welfare in residential, commercial and industrial areas, and in areas undergoing development;

(3) Municipal boundaries should be extended, in accordance with specific standards, to include areas where a high quality of *urban* governmental services is needed and can be provided for the protection of public health, safety and welfare and to avoid the inequities of double taxation and the proliferation of special service districts;

(4) Areas annexed to municipalities in accordance with appropriate standards should receive the services provided

by the annexing municipality as soon as possible following the annexation;

(5) . . . .[4]

Cities are given this authority of annexation without permission of the landowner by Section 10–2–417, which, in effect, and as far as material here, provides that the municipality may extend the municipal corporate limits if the property is (a) contiguous and (b) lies within the area projected for municipal expansion under the annexing municipality's policy declaration.

Section 10–2–414 allows the municipality on its own initiative to adopt a policy declaration with regard to annexation. Section 10–2–415 provides that if (1) the policy declaration meets the standards set forth in the annexation statute, in the judgment of the municipality, and (2) there is no protest filed by an affected entity, the city may, by two-thirds vote of the governing body, adopt an ordinance of annexation and the territory shall then and there be annexed.

■ Except for their right to be heard at the public hearing before adoption of the policy declaration and asserting whatever influence they may have within the governing body of the city or other affected entities, the property owner cannot prevent the annexation if there is compliance with these sections of the law.

■ However, a developing property owner has an additional opportunity for input into the annexation determination. Once the declaration is adopted, no urban development, shall be approved or permitted within the area to be annexed, as that term is defined under Section 10–1–104(11), subject to certain limitations. The urban developing property owner may notify the municipality in writing of his desire to develop the property and can identify with particularity all legal and factual barriers preventing annexation (Section 10–2–418).

---

**3.** Section 10–3–1, Utah Code Annotated 1953, as amended by Chapter 48, Laws of Utah 1977, Section 10–2–401.

**4.** Emphasis is added.

A reading of that section indicates that the legislature intended that there be a good faith and diligent effort to work out those legal and factual barriers by both the municipality and the developing property owner to accomplish the annexation in accordance with the legislative policies. If such effort does not result in annexation after 12 months following the filing of the written notice by the urban developing landowner, setting forth specifically the legal and factual barriers, the owner is then free to proceed with his development regardless of the existence of the policy declaration. There is nothing in the record to indicate that Sweetwater ever filed a written notice of its intent to develop the property and identifying any legal or factual barriers preventing annexation.

Sweetwater in its complaint did not attack the constitutionality of the statutes under which Alta was proceeding, but did allege and persuade the trial court that the policy declaration constituted an unconstitutional taking of property without compensation.[5] The trial court in its supplemental findings of fact and conclusions of law determined that, except for the sufficiency of the policy declaration and inclusion of and notice to two affected entities (Salt Lake City and Salt Lake County Service Area No. 3), "the town of Alta fully and completely complied with the procedural requirements of the Utah Municipal Code, Section 10–2–401, et seq., . . . , in the passage of its Policy Declaration." This being the case, there is serious doubt whether the issue of constitutionality was properly before the court. The attack should have been on the legislative act itself and not on the action taken by Alta pursuant to that act.

◼ Even if the pleadings were properly construed to raise the constitutional issue, the filing of a policy declaration, as provided by statute, would not amount to a taking of the property. The most that the declaration can do is to stop further urban development, as that term is defined, until all legal and factual barriers preventing annexation have been, in good faith and with diligence, resolved to the satisfaction of the city with a time limit of not to exceed 12 months if the property owner files his written objections. The declaration is not an annexation and does not and cannot impose restrictions on future urban development of the property and does not deprive the owner of its beneficial use. The fact that the policy declaration may create some delay in urban development or hardship or even financial loss must give way to the needs of the public for orderly urban growth and development and for the protection of the public health, safety, and welfare as set forth in the legislative policy declaration. The question of depriving a property owner of vested rights might come into existence if the annexation is completed and zoning and building regulations are then imposed by the annexing entity that are contrary to existing use or prior valid building permits or pending applications. Until that occurs, any consideration by the Court on this issue would be premature. Annexation may or may not occur; zoning may or may not permit the contemplated urban development by Sweetwater; or Alta, if annexation is completed, may or may not recognize the excavation permit issued by the county.

It is conceded by Sweetwater that Alta proceeded as required by the annexing statute except that they contended and the trial court found that Alta did not comply with the statute (1) in that no notice of their intent to adopt the policy declaration and no notice of the date of the public meeting were sent to Salt Lake County Service Area No. 3 and Salt Lake City, and they were not

---

5. Conclusion of Law No. 16: "In view of such existing use, to impose the restrictions of 10–2–418 upon the Sweetwater property, as demanded by defendant Alta, would constitute a taking of property without just compensation or due process in violation of the Fifth Amendment to the Constitution of the United States and Article 1, Section 7, and Article 1, Section 22 of the Constitution of Utah."

described in the policy declaration that they are "affected entities" who must be noticed and described and (2) that the policy declaration was deficient in its terms.

The courts are almost unanimous in holding that substantial compliance with annexation law is all that is required of municipalities.[6] In addition, Section 10–1–103 of that act states, as follows:

> Section 10–1–103. Construction—The powers herein delegated to any municipality shall be liberally construed to permit the municipality to exercise the powers granted by this act except in cases clearly contrary to the intent of the law.

Section 10–2–414 outlines the subject matters to be "included and addressed" within the policy declaration, but the section is silent as to how much detail should be covered or is required. The trial court, in its findings of fact and conclusions of law, lists 21 separate inadequacies in the Alta Policy Declaration. A complete review of each of these findings and conclusions would not be helpful and would make this opinion overly voluminous. Suffice it to say that all of the subject matters required by that section of the code were contained within the policy declaration, and although some provisions contained little itemized detail, all were "included and addressed."

■ The statute defines an affected entity in the following language:

> "Affected entities" means a county, municipality or other entity possessing taxation powers within a county, whose territory, service delivery or revenue will be directly and significantly affected by a proposed boundary change involving a municipality or other local entity.[7]

There is nothing in the record to show that Salt Lake City would be directly or significantly affected by a proposed boundary change or that they otherwise came within the definition of an affected entity.

The Salt Lake County Service Area No. 3 is authorized by Section 17–29–13 to fix the rate of the tax to be assessed within its district and to certify that rate to Salt Lake County so that the county can then exercise its taxing powers. It is conceded that Salt Lake County was described in the policy declaration and that the county was given the required notices and that Salt Lake County filed no protest or application with the boundary commission protesting the proposed change in the Alta municipal boundaries. The record further shows that representatives of the Service Area No. 3 were in attendance at both the public meetings of June 12, 1979, and September 13, 1979, and were fully apprised of the contents of the policy declaration and the considerations being made and discussed. Neither Salt Lake City nor the Salt Lake County Service Area No. 3 come within the definition of an affected entity.

■ Overall, the policy declaration and the actions of Alta in conjunction therewith do constitute a substantial compliance with the statute. This is particularly true in view of the provisions of the code which provide that "the policy declaration, including maps, may be amended from time to time by the governing body ..."[8] and that before annexation can be completed, the question of whether or not the policy declaration meets the standards set forth in the act is left to the "judgment of the municipality."[9]

The judgment is reversed insofar as it declares the Alta Policy Declaration void and unenforceable and perpetually enjoins Alta from further interference with the development of the Sweetwater property.

---

6. *Scottsdale v. State ex rel. Pickrell*, 98 Ariz. 382, 405 P.2d 871 (1976); *Clarke v. City of Wichita*, 218 Kan. 334, 543 P.2d 973 (1975); *City and County of Denver v. Board of County Commissioners*, Colo., 191 Colo. 104, 550 P.2d 862 (1976).

7. Section 10–1–104(8), Utah Code Annotated 1953, as amended, 1979 Supplement.

8. Section 10–2–414.

9. Section 10–2–415(1).

█ Alta has asked this Court to reverse the judgment of the trial court regarding Alta's counterclaim. The counterclaim prayed for an order permanently enjoining Sweetwater from commencing the development or improvement of the subject property, except in accordance with Section 10–2–401 et seq. There is nothing in the record to show that Sweetwater had commenced or was planning to proceed with development or improvement contrary to law and, therefore, that portion of the judgment dismissing Alta's counterclaim is affirmed.

MAUGHAN, C. J., HALL, J., and CROCKETT, Retired Justice,* concur.

* Crockett, Retired Justice, concurred in this case before his retirement.

STEWART, J., does not participate herein.

WILKINS, J., having disqualified himself, does not participate herein; BUNNELL, District Judge, sat.