CHEVRON U.S.A., INC., a California corporation; Chevron Pipe Line Company, a Delaware corporation; and Chevron Shale Oil Company a California corporation, Petitioners and Respondents,

v.

CITY OF NORTH SALT LAKE, Defendant and Appellant.

No. 18831.

Supreme Court of Utah.

Aug. 6, 1985.

Rehearing Denied Aug. 28, 1985.

Michael T. McCoy, Salt Lake City, for defendant and appellant.

David A. Greenwood, A. Jayne Allison, Salt Lake City, for petitioners and respondents.

STEWART, Justice.

The defendant, City of North Salt Lake, annexed land owned by the petitioners, Chevron U.S.A., Inc., Chevron Pipeline Co., and Chevron Shale Oil Co. In the district court, Chevron challenged the annexation and also sought disconnection of the land annexed. The trial court ruled that the annexation was invalid and also granted a decree of disconnection. We reverse the granting of disconnection and affirm the invalidation of the annexation.

Chevron owns a 472-acre plot of land, located at the southwestern corner of the City. The Chevron property is bordered by the City on the North and East; by unincorporated Davis County on the West; and by Salt Lake City on the South. Chevron has operated an oil refinery on the property since 1948. In the late 1970's, Chevron began construction of a multi-million dollar oil shale refinery on its property.

In October 1979, the City adopted a policy declaration favoring annexation of the Chevron property. The policy declaration stated that the City favored (1) annexation along boundaries of water, sewer improvement or special districts; (2) encouraging equitable distribution of community resources and obligations; and (3) annexation of all unincorporated area which is or may become urban. In the policy declaration, the City committed to provide the full panoply of municipal services to annexed areas, including fire and police protection, garbage collection, and water, sewer and storm drain services.

In July 1981, and again in October 1981, the City passed resolutions annexing the Chevron property. In August, 1981, Chevron filed a complaint in the district court, alleging that the City's policy declaration was void because of procedural defects and that the City had annexed the Chevron property for the sole purpose of acquiring additional municipal revenue without having to render additional municipal services.

On June 16, 1982, Chevron amended its complaint to add a claim for disconnection. On June 21, 1982, the trial court entered a pre-trial order, which recited that the parties had stipulated that (1) Chevron waived alleged procedural defects in the policy declaration, and (2) Chevron's property was deemed annexed by the October 1981 resolution. The order stated that the only issues to be litigated were (a) whether the City had annexed the Chevron property for the sole purpose of acquiring additional municipal revenue without having to provide additional municipal services, and (b) whether Chevron was entitled to have its property disconnected from the City.

The trial court ruled for Chevron on both issues. The court found that since 1948 Chevron had privately contracted for water, sewer, solid waste disposal, roads, fire and police protection, and that the only services that the City had the ability to supply the Chevron property were water, solid waste disposal, and fire and police protection. The court held that (1) the City had annexed the Chevron property for the sole purpose of acquiring municipal revenue, and (2) that Chevron was entitled to disconnection. Accordingly, the court or-

dered the Chevron property disconnected from the City.

The City argues on appeal that the trial court erred in ordering disconnection. The City does not challenge the trial court's conclusion that the City annexed the Chevron property for the sole purpose of acquiring additional municipal revenue.

## I.

■ The boundaries of municipalities may be modified in two ways. By annexation a municipality may enlarge its boundaries to include new territory and by disconnection, also called detachment, property owners or residents may be excluded from a municipality. *See generally* C. Rhyne, *The Law of Local Government Operations*, § 2.32–2.47 (1980). The Legislature has established separate procedures and standards for annexation and disconnection.

## A.

Annexation is governed by the Local Boundary Commissions Act, U.C.A., 1953, § 10–2–401 et seq. (Supp.1983). The act is comprehensive and allows municipalities to

annex territory in accordance with the procedures and standards set forth therein. *See Sweetwater Properties v. Town of Alta,* Utah, 622 P.2d 1178, *modified on other grounds,* 638 P.2d 1189 (1981); *cf. Freeman v. Centerville City,* Utah, 600 P.2d 1003 (1979). For the purposes of this opinion, it suffices to mention three provisions of the act.

■ First, a municipality must adopt a policy declaration before annexing territory having more than five acres, § 10–2–414. *See generally Doty v. Cedar Hills,* Utah, 656 P.2d 993 (1982). Before adopting the policy declaration, the governing body of the municipality must give proper notice of a public hearing and hold a public hearing on the declaration. Chevron's stipulation in the pre-trial order waived all procedural defects in the city's policy declaration.

Second, the annexation must comply with the standards set forth in U.C.A., 1953, § 10–2–417.[1] Subsection three of the section provides: "Municipalities shall not annex territory for the sole purpose of acquiring municipal revenue ... without the

---

1. That section states:

(1) Except as provided in subsections (2) and (3) of this section, a municipal governing body may extend the municipal corporate limits to include any area which meets the following standards:

(a) It must be contiguous to the boundaries of the annexing municipality at the time the annexation is approved by the governing body of the municipality;

(b) It must lie within the area projected for municipal expansion under the annexing municipality's policy declaration;

(c) The territory shall not be included within the boundaries of another incorporated municipality, except as otherwise provided in this chapter;

(d) The annexation shall not create unincorporated islands within the boundaries of the municipality except that existing islands or peninsulas within a municipality may be annexed in portions, leaving islands, if a public hearing is held and the governing body of the municipality adopts a resolution to the effect that the creation or leaving of an island is in the interest of the municipality; and

(e) If the territory proposed for annexation includes urban development, the annexation

of which would displace municipal-type services presently being provided by an affected entity applying for boundary commission review, the actual taxes and other revenue which would be lost by the affected entity through annexation shall not significantly exceed the affected entity's actual delivery costs of services assumed by the municipality. In computing the tax and revenue loss and service delivery costs, only the figures for the applicable budget year preceding the day on which the petition for annexation is filed shall be used.

(2) The governing body of a municipality may, under the provisions of the Interlocal Co-operation Act [11–13–1 to 11–13–27], agree with other municipalities for periods of two years, which may be automatically extended, to abide by annexation standards more stringent than the above.

(3) Municipalities shall not annex territory for the sole purpose of acquiring municipal revenue or for retarding the capacity of another municipality to annex into the same or related territory, in either case, without the ability and intent to benefit the annexed area by rendering municipal services in the annexed area.

ability and intent to benefit the annexed area by rendering municipal services in the annexed area." The trial court ruled that the annexation violated this subsection.

■ Third, the Local Boundary Commissions Act contemplates that residents of an annexed area may challenge the annexation in court, although the act does not specify a particular kind of judicial procedure for such a challenge. Section 10–2–423 states that if residents of an annexed area pay property taxes levied by the municipality for a year or more, and no residents contest the annexation in a court of proper jurisdiction during the year following the annexation, the territory shall be conclusively presumed to be properly annexed.

### B.

■ Disconnection is governed by U.C.A., 1953, § 10–2–501 et seq. (Supp. 1983), entitled "Restriction of Municipal Limits." *See generally In re Disconnection of Certain Territory from Highland City*, Utah, 668 P.2d 544 (1983); *In re Disconnection of Territory*, Utah, 646 P.2d 699 (1982). Section 10–2–501 provides that a majority of real property owners in a territory within a municipality may seek disconnection by filing a petition with the district court. The general standard for determining whether a disconnection should be ordered is whether "justice and equity" require disconnection. § 10–2–503. Additional criteria that a court must consider in deciding whether to order disconnection are established by § 10–2–503.[2]

### II.

■ Annexation and disconnection obviously serve different purposes, are effec-

tuated by different statutory procedures, and are governed by different criteria. A property owner of annexed territory cannot forego the specified legal procedure for challenging an annexation and instead resort to disconnection procedures because those procedures might be more successful for attacking an annexation. Disconnection is not a substitute procedure for attacking an annexation. *Cf. Sandy City v. City of South Jordan*, Utah, 652 P.2d 1316 (1982). If a disconnection action could be used to oppose annexation instead of attacking the annexation pursuant to the statutory procedures provided for that purpose, a municipality and the property owners in an annexed territory could engage in an endless round of annexation, disconnection, and re-annexation. Clearly the Legislature did not intend that the disconnection and annexation statutes should be construed to permit that result. We do not mean to say that property once annexed can never be disconnected. Changed, and unusual or compelling circumstances might justify the disconnection of previously annexed property. *Compare Freeman v. Centerville City*, Utah, 600 P.2d 1003 (1979). In this case, however, there was no justification for resorting to the disconnection statutes, and disconnection was therefore inappropriate.

■ The trial court, however, also ruled that the annexation of the Chevron property violated § 10–2–417(3), "in that [the City] annexed said territory for the sole purpose of acquiring municipal revenue without the ability to benefit said territory by rendering municipal services therein."

---

**2.** Section 10–2–503 provides:
The court for the purposes of determining whether or not territory should be disconnected shall consider whether or not disconnection will leave the municipality with a residual area within its boundaries for which the cost, requirements, or other burdens of municipal services would materially increase over previous years or for which it would become economically or practically unreasonable to administer as a municipality. The court shall consider, all relevant factors including, but not limited to, the effect of the disconnection on the following: the city or community as a whole, adjoining property owners, existing or projected streets or public ways, water mains and water services, sewer mains and sewer services, law enforcement, zoning and other municipal services and whether or not the disconnection will result in islands or unreasonably large or varied-shaped peninsular land masses within or projecting into the boundaries of the municipality from which the territory is to be disconnected.

The City challenges neither the conclusion that the Chevron property was annexed for the sole purpose of acquiring municipal revenue nor the conclusion that the City has no ability to render services that would benefit the Chevron property. Accordingly, the attempted annexation was properly ruled unlawful under the annexation statutes by the trial court.

Affirmed. No costs.

HOWE, DURHAM and ZIMMERMAN, JJ., concur.

HALL, C.J., concurs in the result.