**In re PIKE COUNTRYSIDE ANNEXATION, Ashley Creek Annexation. Showalther Annexation and Gibson Annexation, Ashley, etc., Appellant,**

v.

**VERNAL CITY, Respondent.**

No. 19210.

Supreme Court of Utah.

Aug. 8, 1985.

Clark B. Allred, Gayle F. McKeachnie, Vernal, for appellant.

A. Lynn Payne, Vernal, for respondent.

STEWART, Justice.

The appellant is Ashley Valley Water & Sewer Improvement District ("Ashley Valley"); the respondent is the City of Vernal. Ashley Valley brought this action before a local boundary commission to protest Vernal's annexation of several areas within Ashley Valley. The boundary commission upheld the annexation, and Ashley Valley appealed to the district court. The district court dismissed Ashley Valley's appeal for lack of standing. We reverse and remand.

Ashley Valley was organized in 1974 to provide water and sewer service to people residing outside of Vernal. To this end, Ashley Valley has incurred $3.5 million of debt. In 1981, the residents of the Pike Countryside, Ashley Creek, Showalter and Gibson areas of Ashley Valley applied to Vernal for annexation. Sixty-two percent of the property owners signed the annexation petition. Vernal granted the petition and annexed the four areas, which totaled 485 acres. At that time, Ashley Valley had spent over $86,000 in constructing sewer lines to the Pike Countryside area. Ashley Valley is dependent on service revenues to retire the debt incurred in constructing the sewer lines.

Pursuant to U.C.A., 1953, § 10–2–408 (1979), Ashley Valley protested the annexation in a hearing before the Uintah County Boundary Commission. The Boundary Commission upheld the annexation. Ashley Valley appealed to the district court and argued that the Boundary Commission hearing denied due process because the hearing procedure denied parties the right to call and cross-examine witnesses or present other evidence. The district court found that the Boundary Commission's findings were not supported by substantial evidence and that the Boundary Commission's findings and conclusions did not address the issues raised in Ashley Valley's protest. In an order dated December 14, 1982, the court remanded the case for additional evidence.

Vernal filed a motion for rehearing on the ground that in *Paulsen v. Hooper Water Improvement District*, Utah, 656 P.2d 459, decided November 12, 1982, approximately one month before the court's order, we held that the water and sewer improvement district therein was not an "affected entity" within the scope of § 10–2–408, and

that accordingly, Ashley Valley lacked standing to appeal the Boundary Commission's decision. The district court accepted Vernal's argument and dismissed the appeal for lack of standing.

Section 10-2-408 is part of a comprehensive statutory scheme enacted as the "Local Boundary Commissions Act." 1979 Utah Laws ch. 25. The Act provides procedures and standards for municipalities to follow in annexing property. See § 10-2-414 et seq. It also establishes "local boundary commissions" to hear protests to annexations. See § 10-2-402 et seq. The only entities which may initiate protests before the boundary commission are "affected entities." § 10-2-408. That term is defined in § 10-1-104(8) to mean "a county, municipality or other entity possessing taxation powers within a county, whose territory, service delivery or revenue will be directly and significantly affected by a proposed boundary change involving a municipality or other local entity."

■ The issue before us is whether a water and sewer improvement district may qualify as an affected entity. Vernal argues that an improvement district cannot qualify because it is not "an entity possessing taxation powers," as the definitional section requires. By statute, a water and sewer improvement district lacks power to levy taxes, U.C.A., 1953, § 17-6-3.4. However, it does have the power to set tax rates and cause taxes to be levied, and the county is obligated to collect taxes on behalf of the district. §§ 17-6-3.4 & 17-6-3.8 (Supp.1983). Vernal argues that since Ashley Valley cannot collect the taxes it causes to be levied, it does not possess "taxation powers."

Because the taxes must be collected on behalf of the district, there is, for the purposes of § 10-1-104(8), no relevant difference between the power to impose and the power to collect taxes. Further, as noted above, Ashley Valley's revenue from service delivery may be significantly affected

by the boundary change. Accordingly, we hold that Ashley Valley is an "affected entity" which has standing to protest Vernal's annexation.

Both the express legislative policy and the language of the Local Boundary Commission Act evidence an intent on the part of the Legislature to give standing to improvement districts to protest boundary changes, even though improvement districts are empowered only to assess, but not to collect, taxes. The Act declares that "[d]ecisions with respect to municipal boundaries and urban development need to be made with adequate consideration of *the effect of the proposed actions* on adjacent areas and *on the interest of other government entities ...,*" § 10-2-401(6). (Emphasis added). Furthermore, if the phrase "other entity possessing taxation powers within a county" in § 10-1-104(8) were limited to entities with the power to collect taxes, then the only unit within a county that could qualify as an affected entity would be a city, which collects license and franchise taxes.

■ Compelling policy considerations support the rule that a governmental subdivision is an affected entity which can protest a boundary change if its revenues will or might be affected by an annexation. As this case demonstrates, water and sewer improvement districts incur millions of dollars of debt to provide needed water and sewer service to their members. When adjacent cities annex areas of improvement district territory, the districts stand to lose thousands of dollars of revenue from members who may choose to discontinue improvement district service. The loss of such revenue could impair the credit rating of special improvement districts and even their ability to repay bonded indebtedness. Certainly, one of the most important functions of local boundary commissions is to mediate disputes to avoid these and other difficulties by ordering appropriate adjustments.[1]

Vernal argues that the result we reach is inconsistent with two prior cases. In *Paul-*

1. We recognize that by statute a majority of real property owners may petition to withdraw from

an improvement district, and that in such a case a statutory procedure exists to determine the

*sen v. Hooper Water Improvement District,* Utah, 656 P.2d 459 (1982), relied on by the trial court, we stated conclusorily that the Hooper Water Improvement District was not an "affected entity" as defined by § 10–1–104(8), and therefore lacked standing to protest an annexation by Roy City. *Id.* at 463. And in *Sweetwater Properties, Inc. v. Town of Alta,* Utah, 622 P.2d 1178, *modified on rehearing,* 638 P.2d 1189 (1981), we held that Salt Lake County Service Area No. 3 was not an affected entity. 622 P.2d at 1183.

Both these cases are distinguishable on their facts, since in neither case did the improvement district or service area make a showing that it would be "directly and significantly affected" by the proposed boundary change. In any event, to the extent that either case intimates that an "affected" entity must possess power to levy and collect taxes rather than simply cause taxes to be collected on its behalf, those cases are overruled.

Reversed and remanded.

HALL, C.J., and HOWE, DURHAM and ZIMMERMAN, JJ., concur.

rights and liabilities of the district and the withdrawing territory. U.C.A., 1953, § 17–6–29. Ashley Valley does not argue that this statute applies to this case. From the statements by counsel at oral argument, it appears that although Vernal has annexed the four areas of Ashley Valley, none of those areas has petitioned for withdrawal from Ashley Valley, i.e., in those four areas the taxing power of Ashley Valley and Vernal overlap.