**MESA DEVELOPMENT COMPANY, INC., Plaintiff and Appellant,**

v.

**SANDY CITY CORPORATION, Defendant and Appellee.**

No. 970029–CA.

Court of Appeals of Utah.

Nov. 6, 1997.

Keith W. Meade, Cohne, Rappaport & Segal, Salt Lake City, for Appellant.

Walter R. Miller, Sandy, for Appellee.

Before BILLINGS, GREENWOOD and ORME, JJ.

BILLINGS, Judge:

Mesa Development Company (Mesa) appeals an order of the district court granting summary judgment for the City of Sandy (Sandy City) in Mesa's challenge to a city ordinance annexing Mesa's property. We affirm.

## FACTS

Mesa is a Utah corporation engaged in real estate development. In 1993, Mesa owned numerous properties in the Salt Lake City area, including an undeveloped 3.89 acre lot in a semirural neighborhood adjacent to Sandy City limits.

In 1993, the Church of Jesus Christ of Latter-day Saints (LDS Church) began plans to build a chapel on Mesa's lot. As part of the development agreement, Mesa filed a petition asking Sandy City to annex the 2.84 acre chapel site. Mesa then sold the chapel site to the LDS Church and filed a second petition asking Sandy City to annex its remaining 1.05 acre lot. Mesa requested in both petitions that the city zone the properties for suburban development.

Between September and December 1993, Sandy City conducted a public review of Mesa's annexation petition and petitions from neighboring property owners. Sandy City eventually consolidated these petitions into a single annexation proposal covering 10.55 acres. On December 14, 1993, the Sandy City Council approved this consolidated proposal, thereby annexing Mesa's property. However, because of strong public opposition, Sandy City rejected Mesa's request to zone the area for suburban development.

On December 13, 1994, Mesa filed suit in district court challenging the annexation on procedural grounds. The trial court found that Sandy City had substantially complied with the statutory requirements for municipal annexation. The court also questioned Mesa's right to challenge the annexation because Mesa was not a resident of the annexed area. Mesa now appeals the trial court's grant of summary judgment in favor of Sandy City.

## ANALYSIS

This case presents three issues. First, whether Mesa's claims have been mooted by the 1997 amendments to the annexation statute. Second, whether Mesa is a resident of the annexed area for the purpose of challenging Sandy City's annexation. Third, whether Sandy City effected a valid annexation by substantially complying with statutory requirements. Because we conclude Mesa is not a resident of the annexed area, we do not reach the validity of the annexation proceedings.

### I. Mootness

As a threshold argument Sandy City claims this case is moot. In May 1997, the Utah Legislature amended the annexation statute to create a comprehensive new statutory scheme for municipal annexations. See Utah Code Ann. §§ 10-2-401 to 510 (Supp. 1997). The 1997 amendments repealed most of the provisions underlying Mesa's procedural challenge. However, these amendments explicitly apply only to annexation petitions still pending on May 5, 1997. See id. § 10-2-404.

The "substantive law to be applied throughout an action is the law in effect at the date the action was initiated." *Utah Dep't of Soc. Servs. v. Higgs*, 656 P.2d 998, 1000 (Utah 1982); see also *Okland Constr. Co. v. Industrial Comm'n*, 520 P.2d 208, 210 (Utah 1974). " 'The well established general rule is that statutes not expressly retroactive should only be applied prospectively.' " *In re Disconnection of Certain Territory from Highland City*, 668 P.2d 544, 549 (Utah 1983) (*quoting In re J.P.*, 648 P.2d 1364, 1369 (Utah 1982)). We give retroactive application only to "procedural statutes ... which do not enlarge, eliminate or destroy vested or contractual rights." *Pilcher v. Dep't of Soc. Servs.*, 663 P.2d 450, 455 (Utah 1983).

The Utah Supreme Court has rejected retroactive application of similar amendments. *See Highland City,* 668 P.2d at 549. In *Highland City,* the supreme court addressed the retroactive application of amendments to the disconnection statute.[1] The court rejected retroactive application because it found that the amendments "constitute[d] a fundamental change in the substantive law on which both sides relied in preparing and presenting their cases and which the district court applied in reaching its decision." *Id.* at 549.

■ The amendments now before us involve changes to the annexation process far broader in scope than the changes to the disconnection statute at issue in *Highland City.* Specifically, the 1997 amendments demand that cities meet new public notice requirements, conduct a lengthy feasibility assessment, and consider public policy factors that were not contemplated in the annexation statute as it applied before 1997. *See* Utah Code Ann. §§ 10–2–413 to 415 (Supp.1997). Thus, we conclude the 1997 annexation amendments do not apply retroactively, and we proceed to the merits of Mesa's appeal.

## II. Residency

The second issue before us is whether Mesa's suit is a challenge by a resident of the annexed area. Sandy City urges that (1) Mesa's suit is barred because only residents of annexed areas have standing to directly challenge municipal annexations on procedural grounds, and (2) Mesa is not a resident of the annexed area and thus cannot overcome the conclusive presumption of valid annexation mandated by Utah Code Ann. § 10–2–423 (1996).

The statutory backdrop for this dispute is Utah's annexation statute. *See* Utah Code Ann. §§ 10–2–401 to 424 (1996). The annexation statute establishes a process by which municipalities may extend their city limits and resolve intermunicipal conflicts over city boundaries. Together with the disconnection statute, the annexation statute provides the sole means through which existing municipalities may alter their corporate boundaries.

Section 10–2–423 of the statute explicitly limits our authority to review municipal annexations:

> Whenever *the residents of any territory* annexed to any municipality pay property taxes levied by the municipality for one or more years following the annexation and *no residents of the territory* contest the annexation in a court of proper jurisdiction during the year following the annexation, the territory shall be conclusively presumed to be properly annexed to the annexing municipality.

(Emphasis added). Because only Mesa has challenged the annexation and because Sandy City has documented receipt of all municipal taxes from the annexed area, we must presume that Sandy City properly annexed the area unless we find that Mesa is a resident whose objection is sufficient to defeat the conclusive presumption of validity. *See id; see also Sandy City v. South Jordan,* 652 P.2d 1316, 1320 (Utah 1982) (stating that annexation meeting section 10–2–423 conditions was "deemed by operation of the statute to have been properly passed and implemented," and issues arising from procedural defects were moot).

■ We therefore examine the annexation statute to determine whether Mesa, a corporation owning undeveloped property within the annexed area, is a resident of the area within the meaning of section 10–2–423. "We look first to the plain language of the statute to discern the legislative intent. . . . 'Only when we find ambiguity in the statute's plain language need we seek guidance from the legislative history and relevant policy consideration.'" *South Salt Lake v. Salt Lake County,* 925 P.2d 954, 957 (Utah 1996) (*quoting Gohler v. Wood,* 919 P.2d 561, 562–63 (Utah 1996)). Furthermore, we will "assume that [the statute's] words were chosen advisedly and that they should all be given meaning." *Cottonwood City Electors v. Salt Lake County Bd. of Comm'rs,* 28 Utah 2d 121, 124, 499 P.2d 270, 272 (Utah 1972). Finally, we examine the entire statutory scheme and harmonize its provisions if possi-

---

1. This statute, which is closely related to the annexation statute, governs the disconnection, or removal, of property from municipalities. *See* Utah Code Ann. § 10–2–501 (Supp.1997).

ble. *O'Keefe v. Utah State Retirement Bd.*, 929 P.2d 1112, 1115 (Utah Ct.App.1996), *cert. granted,* 939 P.2d 683 (Utah 1997).

■ The Utah Supreme Court has stated that in the construction of both contracts and statutes, words such as "resident," "which are used in common, daily, nontechnical speech, should, in the absence of evidence of a contrary intent, be given the meaning which they have for laymen in such daily usage." *Government Employees Ins. Co. v. Dennis,* 645 P.2d 672, 675 (Utah 1982). In this context, "the definition of 'resident' in the standard nonlegal dictionaries" is a helpful guide to its general meaning. *Id.* Webster's Third New International Dictionary defines a resident as "one who resides in a place: one who dwells in a place for some period of duration—often distinguished from inhabitant." *Webster's Third New Int'l Dictionary* 1931 (1986). Thus, a "resident" is someone who dwells or resides in a place so as to be more than a mere inhabitant. In *Dennis,* the supreme court applied this everyday meaning to find that a resident of a household for the purpose of insurance coverage was "one, other than a temporary or transient visitor, who lives together with others in the same house for a period of some duration, although he may not intend to remain there permanently." 645 P.2d at 676.

■ Mesa did not "dwell" or "reside" in the annexation area and thus is not a resident under the everyday meaning of the word. Mesa owned a small, undeveloped plot in the annexation area. Mesa's only plans for the plot were to develop it for sale on the real estate market. Mesa conducted no business on the plot, and its primary place of business was outside the annexation area. No officers of Mesa lived in the annexation area, nor were their city services or voting rights affected by the annexation. However, Mesa argues that because it paid property taxes on land in the annexation area, we must assume it was a resident for the purpose of section 10–2–423. We disagree.

Utah's annexation statute makes repeated reference to both "residents" and "property owners." On examining its plain language, we find that the statute clearly distinguishes between these groups by granting them different rights and remedies. Section 10–2–414 of the statute entitles both residents and property owners to receive notice of proposed annexations:

At least 30 days prior to any hearing [on an annexation policy declaration], notice of the time and place of such hearing ... shall be published in a newspaper of general circulation in the area proposed for expansion, except that when there are 25 or fewer *residents or property owners* within the affected territory, mailed notice may be given to each affected *resident or property owner.*

Utah Code Ann. § 10–2–414(2) (1996) (emphasis added).

In addition to mandating public notice, the statute gives broad rights to property owners. First, most annexations can only be initiated by a majority of property owners:

Whenever *the majority of the owners of real property and the owners of at least one-third in value of the real property* ... in territory lying contiguous to the corporate boundaries of any municipality, shall desire to annex such territory to the municipality, they shall [file a petition for annexation]. Except as provided for in Section 10–2–420 [a narrow exception allowing municipalities to initiate annexation proceedings for islands or peninsulas of county territory within their boundaries], no annexation may be initiated except by [a property owner] petition.

*Id.* § 10–2–416 (emphasis added). Second, property owners retain a right of veto over any annexations that cities initiate:

Any municipality ... may ... extend its corporate limits to include [islands or peninsulas of urbanized county land within its boundaries], however, any such annexation ... shall be defeated if *a majority of the owners of real property and the owners of at least one-third in value of the real property* ... of the area file a written protest to such annexation not later than the day preceding the public hearing.

*Id.* § 10–2–420 (emphasis added). Finally, property owners in already-annexed areas may petition a district court to remove their property from a municipality under the dis-

connection statute: "A *majority of the real property owners* in any territory within and lying on the borders of any incorporated municipality may file with ... the district court ... a petition [of] disconnect[ion]." *Id.* § 10–2–501 (emphasis added).

In contrast, the annexation statute protects residents' interests largely through traditional notice and hearing requirements. "Before annexing unincorporated territory having more than five acres, a municipality shall ... adopt a policy declaration [which] shall include ... an estimate of the tax consequences to *residents* in both new and old territory of the municipality." *Id.* § 10–2–414(2) (emphasis added). The only substantive protection for residents is the presumption of proper annexation mandated by section 10–2–423:

> Whenever *the residents of any territory* annexed to any municipality pay property taxes levied by the municipality for one or more years following the annexation and *no residents of the territory* contest the annexation in a court of proper jurisdiction during the year following the annexation, the territory shall be conclusively presumed to be properly annexed to the annexing municipality.

(Emphasis added.) Thus, once residents have accepted an annexation for one year, they will not be deprived of municipal services and voting rights because of a procedural defect in the original annexation. This presumption of validity furthers the statutory goal of extending municipal rights and benefits to all residents of urbanized areas. *See* Utah Code Ann. § 10–2–401 (1996).

The above provisions clearly distinguish property owners from residents. Both property owners and residents are entitled to receive notice of annexations and participate in public hearings. However, in granting additional protections, the Legislature adopted two different procedures: one for property owners and another for residents. These separate provisions reflect the unique nature of each group's interest in the annexation process. In sections 10–2–416 and –420, the Legislature protected property rights and economic interests by granting property owners a strong role in the determination of municipal boundaries. In sections 10–2–414 and –423, the Legislature safeguarded residents' municipal rights by requiring public notice of new annexations and by crafting a presumption of valid annexation that protects residents who already enjoy voting rights and other benefits of incorporation. Thus, the statutory scheme supports Sandy City's claim that property owners are not residents under the statute and that the presumption of validity mandated by section 10–2–423 bars Mesa's action.[2]

Mesa argues that exclusion of nonresident property owners from the definition of "resident" in section 10–2–423 deprives Mesa of any remedy against Sandy City's annexation of its property. However, Mesa has already chosen to forego the clear remedies that the annexation statute provides for property owners. Furthermore, Mesa is free to petition the district court for disconnection. "Annexation and disconnection ... serve different purposes, are effected by different statutory procedures, and are governed by different criteria." *Chevron,* 711 P.2d 228,

---

**2.** Mesa contends that Utah courts have already recognized standing for corporate property owners to challenge annexations, regardless of whether they are residents of annexed areas. However, the cases Mesa cites do not support its position. Mesa's leading case is *Chevron v. North Salt Lake,* 711 P.2d 228 (Utah 1985). In *Chevron,* the Utah Supreme Court held invalid the annexation of an area belonging entirely to a single corporation. The only issues at trial were whether the City had annexed the corporation's property solely to increase tax revenue in violation of Utah Code Ann. § 10–2–417(3) (1996), and whether the corporation was entitled to disconnection. Thus, the court never determined whether corporate property owners are residents of annexed areas with a cause of action under

the annexation statute. *See also Paulsen v. Hooper Water Dist.,* 656 P.2d 459, 463 (Utah 1982), *overruled on other grounds, Pike Countryside v. Vernal,* 711 P.2d 240, 243 (Utah 1985), (holding that water district could not directly contest annexation proceeding because it was not "an affected resident or property owner"); *Sweetwater Properties v. Alta,* 622 P.2d 1178, 1181, *modified,* 638 P.2d 1189 (Utah 1981), (holding, after modification, that annexation statute limited property owner's remedies against forced municipal annexation); *Doenges v. Salt Lake City,* 614 P.2d 1237, 1241 (Utah 1980) (holding that group including property owners *and residents* of annexed area had standing to seek declaratory judgment on constitutionality of the annexation statute).

229. In Mesa's case, a disconnection action would not be merely "a substitute procedure for attacking an annexation." *Id.* Rather, it would air Mesa's grievance in a forum that, unlike the current annexation challenge, is explicitly designed to allow public debate on the policy implications of altering established city boundaries.

In sum, the principles of statutory construction require us to presume that the Legislature used the terms "property owner" and "resident" advisedly to describe two distinct categories of potential plaintiffs under the annexation statute. *See Cottonwood City Electors,* 28 Utah 2d at 124, 499 P.2d at 272. We conclude the Legislature did not contemplate that "residents" under section 10–2–423 would include nonresident property owners. On the contrary, Mesa's claim—in which the absentee owner of a single undeveloped lot raises procedural defects to invalidate the annexation of an entire residential neighborhood—is clearly preempted by the statute's plain language. We conclude that, based on the presumption of validity in section 10–2–423, Sandy City's annexation of Mesa's property was valid.

### CONCLUSION

The 1997 amendments to the annexation statute do not apply retroactively to Sandy City's 1993 annexation of Mesa's property, and thus Mesa's claims are not moot. However, Mesa is not a resident of the annexed area under section 10–2–423 and cannot overcome that section's conclusive presumption of valid annexation. Sandy City's annexation of Mesa's property is therefore valid regardless of any procedural defect.

GREENWOOD, J., concurs.

ORME, J., concurs in the result.