2002 UT App 221

**TRAVELERS/AETNA INSURANCE COMPANY, Plaintiff and Appellee,**

v.

**Keith WILSON and Trisha Wilson, Defendants and Appellants.**

**Keith Wilson and Carlene Wilson, Guardians Ad Litem for Trisha Wilson, a minor, Counter Plaintiffs,**

v.

**Travelers/Aetna Insurance Company, Counter Defendant.**

No. 20000227–CA.

Court of Appeals of Utah.

June 27, 2002.

**1290**

Steve S. Christensen, Henriod & Nielsen, Salt Lake City, for Appellants.

Terry M. Plant and H. Justin Hitt, Plant, Wallace, Christensen & Kanell, Salt Lake City, for Appellee.

Before Judges BILLINGS, ORME, and THORNE.

## OPINION

BILLINGS, Associate Presiding Judge:

¶ 1 Keith Wilson and his minor daughter Trisha Wilson were passengers involved in an auto accident in Utah. The relevant facts leading up to the accident are undisputed.

## BACKGROUND

¶ 2 Around May 1, 1996, Keith Wilson accepted a job in Salt Lake City as a driver for a trucking company. The Wilson family was living in New York. The family moved out of their New York residence and into Keith's parents' home, also in New York, sold much of their furniture, and placed other personal property in storage. Keith requested that his dispatcher route his next trucking assignment through Salt Lake City so he could look for an apartment there. Keith also renewed his automobile insurance policy with Travelers Insurance[1] while in New York, listing a New York address, and told Travelers that he was planning to move to Utah. The insured vehicle was registered in New York and remained garaged in New York at the time of the accident. The policy had personal liability limits of $25,000 per person, $50,000 per accident, and $10,000 for property damage. The policy also included mandatory personal injury protection (PIP) benefits of $50,000, as required under New York law. Keith purchased optional supplementary underinsured motorist (SUM) coverage with limits of $25,000 per person, $50,000 per accident. The policy stated that "[t]he maximum amount payable under SUM coverage shall be the policy's SUM limits reduced and thus offset by motor vehicle bodily injury liability insurance policy or bond payments received from, or on behalf of, any negligent party involved in the accident, as specified in the SUM endorsement."

¶ 3 On June 30, 1996, Keith left with his minor daughter Trisha, then age ten, on a long-haul cross-country trucking assignment. Keith's wife and younger daughter remained in New York. The trip route required them to go through various states. The pair spent the Fourth of July in Texas, and the renewal Travelers policy became effective on July 5, 1996. Keith and Trisha arrived in Salt Lake City on July 18, 1996, and spent approximately two days looking at apartments and filling out several apartment application forms. The remaining leg of Keith's trucking assignment required that he go to Oregon and Washington after leaving Utah. However, on July 21, 1996, while still in Salt Lake City, both Keith and Trisha were passengers in a car owned and operated by a family friend when they were involved in an auto accident. Keith was admitted to a local hospital and was released on August 4, 1996. Trisha was also treated for injuries in Salt Lake City. A few days after being released from the hospital, Keith and Trisha returned directly to New York. The family eventually moved to Utah in November of 1996.

¶ 4 Keith stated in his deposition that at the time of the accident, his driver license was issued in New York, he did not have a Utah address, he was registered to vote in New York, and he paid income taxes to the State of New York. In addition, after the accident, he applied for social security disability benefits in New York, listing a New York address.

1. While the policy was actually issued by Aetna Insurance Company, Aetna was subsequently acquired by Travelers Insurance Company. Therefore, Aetna and Travelers are collectively referred to as "Travelers."

¶ 5 Keith and Trisha received more than $25,000 each when they settled their claims against the negligent parties. In addition, they claimed and received from Travelers approximately $50,000 each in PIP benefits available under the policy. They also sought $25,000 each in SUM benefits under the Travelers policy.

¶ 6 Travelers filed for a declaratory judgment, claiming that Keith and Trisha were not entitled to SUM benefits under the policy. Both parties filed motions for summary judgment, and the Wilsons also filed a motion to amend their pleadings. The trial court granted Travelers's summary judgment motion and denied both of the Wilsons' motions, basing its judgment on two grounds: First, that New York law applied to the contract under a conflict of laws analysis; and second, that "even if Utah law applied to the interpretation of the insurance contract between [Travelers] and [the Wilsons], Utah law does not bar the use of offsets to reduce any amounts received by the [Wilsons] from the tortfeasor against the SUM benefits under the insurance contract." The Wilsons appeal the grant of summary judgment in favor of Travelers and the denial of the Wilsons' motions.[2] Because we conclude the Utah stacking provision in Utah Code Ann. § 31A–22–305 (1999) does not apply to the Wilsons' claim, we need not reach the conflict of laws issue.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 "A grant of summary judgment is proper when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law." *American Nat'l Fire Ins. Co. v. Farmers Ins. Exch.*, 927 P.2d 186, 188 (Utah 1996); *see also* Utah R. Civ. P. 56(c). The trial court's conclusions of law are reviewed for correctness. *See id.*

## ANALYSIS

¶ 8 The Wilsons argue that under a conflict of laws analysis, Utah law should be applied in this case because Utah has a more signifi-

cant relationship to the insurance policy than New York. Under New York law, SUM benefits are offset by insurance payments from the negligent party. *See* N.Y. Ins. Law § 3420(f)(2)(A) (McKinney 2000); N.Y. Comp.Codes R. & Regs. tit. 11, § 60–2.1(c) (LEXIS through April 5, 2002). The Wilsons claim that "Utah law does not permit the [SUM] offset against other insurance coverages under the facts of this case." Specifically, they contend that Utah Code Ann. § 31A–22–305 (1999 & Supp.2001) applies to this case, which would allow them to recover SUM benefits under the Travelers policy. The relevant portions of subsection 31A–22–305(10) (Supp.2001) state:

(b) (i) The limit of liability for underinsured motorist coverage for two or more motor vehicles may not be added together, combined, or stacked to determine the limit of insurance coverage available to an injured person for any one accident.

(ii) Subsection (10)(b)(i) applies to all persons except a covered person as defined under Subsection (10)(d)(i)(B).

. . . .

(d) (i) Each of the following persons may also recover underinsured motorist coverage benefits under any other policy in which they are described as a "covered person" as defined under Subsection (1):

. . . .

(B) a covered person injured while occupying or using a motor vehicle that is not owned by, furnished, or available for the regular use of the covered person, the covered person's resident spouse, or the covered person's resident relative.

. . . .

(v) Neither the primary nor the secondary coverage may be set off against the other.

Utah Code Ann. § 31A–22–305(10) (Supp. 2001).

Wilsons' claim to have mistakenly admitted that they "were New York residents up to and including the time of the accident" in their answer.

¶ 9 Travelers asserts that this section does not apply to the Travelers policy. They argue that Utah Code Ann. § 31A–21–101 (1999), entitled "Scope of Title 31A, Chapters 21 and 22," expressly states that Chapters 21 and 22 of Title 31A apply to insurance policies:

   (a) delivered or issued for delivery in this state;

   (b) on property ordinarily located in this state;

   (c) on persons residing in this state when the policy is issued; and

   (d) on business operations in this state.

*Id.* § 31A–21–101(1). Accordingly, because the code provision allowing for the stacking of SUM benefits, section 31A–21–305(10), applies only to policies within the scope of section 31A–21–101(1), Travelers argues that the Utah stacking law does not apply to the Travelers policy. Specifically, because the policy at issue was not delivered or issued for delivery in Utah, and was not for a vehicle ordinarily located in Utah, nor for persons residing in Utah when the policy was issued, and not for business operations in Utah, the statute upon which the Wilsons rely is inapplicable. We agree. Because we agree with the trial court that section 31A–22–305, the Utah stacking provision, does not apply, the Wilsons' claim fails.

■ ¶ 10 First, it is clear that under section 31A–21–101(1)(a), the Travelers policy was not "delivered or issued for delivery in [Utah]." Keith renewed the policy at a New York local branch while still in New York, listed a New York address on his amended declarations page, the policy conformed to New York law, and the New York office issued the renewal.

■ ¶ 11 Second, under section 31A–21–101(1)(b), the Travelers policy was not for "property ordinarily located in this state" because the insured vehicle remained registered and garaged in New York both at the time the policy was renewed and at the time of the accident.

■ ¶ 12 Finally, under section 31A–21–101(1)(c), Keith and Trisha were not "persons residing in this state when the policy [was] issued."[3] In order to determine if they were "persons residing in" Utah at the time of the renewal policy, we must first define "residing in." " ' "When faced with a question of statutory construction, we look first to the plain language of the statute." ' In so doing, ' "[w]e presume that the legislature used each word advisedly and give effect to each term according to its ordinary and accepted meaning." ' " *Arredondo v. Avis Rent A Car Sys., Inc.*, 2001 UT 29, ¶ 12, 24 P.3d 928 (citations omitted) (alteration in original). "The Utah Supreme Court has stated that in the construction of ... statutes, words such as 'resident,' 'which are used in common, daily, nontechnical speech, should, in the absence of evidence of a contrary intent, be given the meaning which they have for laymen in such daily usage.' " *Mesa Dev. Co. v. Sandy City Corp.*, 948 P.2d 366, 369 (Utah Ct.App.1997) (quoting *Government Employees Ins. Co. v. Dennis*, 645 P.2d 672, 675 (Utah 1982)). "In this context, 'the definition of "resident" in the standard nonlegal dictionaries' is a helpful guide to its general meaning." *Id.* (quoting *Government Employees,* 645 P.2d at 675).

¶ 13 Webster's Third International Dictionary defines "reside" and "residing" as "to dwell permanently or continuously," "have a settled abode for a time," and "have one's residence or domicile." Webster's Third New International Dictionary 1931 (1986). In addition, Webster's defines "resident" as "dwelling or having an abode for a continued length of time." *Id.*[4]

---

**3.** The renewal policy states that the "Annual Effective Date" is July 5, 1996; the "Policy Period" is from July 5, 1996 to July 5, 1997, 12:01 a.m. standard time; and the "Effective Date" is July 31, 1996. Counsel for the Wilsons asserted for the first time at oral argument that July 31, 1996 is the critical date at issue. However, the Travelers policy defines "Your covered auto" as "[a]ny ... vehicle as of the date you become the owner so long as that date is *within the policy period*" and a "covered person" as "[y]ou or any family member ... while occupying ... a motor vehicle." (Emphasis added.) Additionally, the Wilsons' brief states that the renewal "came in to effect, on July 5, 1996," and Wilsons' counsel also asserted the same date at the motion hearing before the trial court. Therefore, we will treat July 5, 1996, as the critical date in this appeal.

**4.** Related cases have either distinguished between "domicile" and "residence," or used them

¶ 14 Further, under Utah case law, "a 'resident' is someone who dwells or resides in a place so as to be more than a mere inhabitant." *Mesa Dev. Co.*, 948 P.2d at 369. " 'Actual' residence requires physical presence. To establish an actual and bona fide residence, '... one must have some abode in the county to which he intends to return and where, in doing so, he would be no trespasser.' " *Bustamante v. Bustamante*, 645 P.2d 40, 41 (Utah 1982) (citations omitted) (alteration in original). Relevant factors include "voting, owning property, paying taxes, having family in the area, maintaining a mailing address, being born or raised in the area, working or operating a business, and having children attend school in the forum." *Id.* In addition, "one retains his residence or domicile until he acquires a new one." *Dodge v. Evans*, 716 P.2d 270, 275 (Utah 1985); *see also Allen v. Greyhound Lines, Inc.*, 583 P.2d 613, 615 (Utah 1978).

¶ 15 In the present case, as of July 5, 1996, when the Travelers policy was issued, it is clear that the Wilsons were not residents of Utah. For instance, they were registered to vote in New York and were paying taxes there. They did not own property or rent property in Utah, nor did they have a mailing address in Utah. Therefore, their argument that Utah Code Ann. § 31A–21–101(1)(c) applies to the Travelers policy because they were "persons residing in [Utah] when the policy [was] issued" fails.

¶ 16 In conclusion, because the Travelers policy does not fall within the scope of section 31A–21–101(1), Utah law that allows the stacking of SUM benefits does not apply. Thus, under Utah and New York law, the provision of the Wilsons' insurance policy prohibiting stacking of SUM benefits is enforceable.[5] Therefore, we affirm the trial court's grant of summary judgment in favor of Travelers and the denial of the Wilsons' motion for summary judgment.

¶ 17 WE CONCUR: GREGORY K. ORME, Judge and WILLIAM A. THORNE JR., Judge.

interchangeably. *See, e.g., Frame v. Residency Appeals Comm. of Utah State Univ.*, 675 P.2d 1157, 1159 n. 1 (Utah 1983) ("In some contexts the terms residence and domicile have different meanings, but for the purpose of this opinion we will treat them synonymously."). *For purposes of this appeal we will address the issue under "residency" alone.*

5. We note, however, that this does not lead to an inequitable result. Under New York law, the minimum for PIP benefits is $50,000 per person. *See* N.Y. Ins. Law § 5103(a),(d) (McKinney 2000); N.Y. Comp.Codes R. & Regs. tit. 11, § 65–1.1(d) (LEXIS through May 17, 2002). Travelers paid this amount to both Keith and Trisha. If Utah law regarding PIP benefits had been applied, the minimum amount would have been $3,000. *See* Utah Code Ann. § 31A–22–307(1)(a) (Supp.2001). In essence, the Wilsons argue for selective application of the most favorable provisions of the insurance laws of two states to a single policy. We can envision no rational basis on which New York's statute concerning PIP benefits would control, while Utah's statute on stacking SUM benefits would govern.