Petition for Naturalization of George John CASTRINAKIS.

Petition No. 40428.

United States District Court
D. Maryland.

Dec. 23, 1959.

L. Vernon Miller, E. Clinton Bamberger, Jr., and Piper & Marbury, Baltimore, Md., for petitioner.

Ernest H. Hupp, Baltimore, Md., for I. N. S.

THOMSEN, Chief Judge.

Petitioner, a Greek subject, seeks naturalization under sec. 319(a) of the I. N. A., 8 U.S.C.A. § 1430(a)[1], as the husband of a citizen of the United States. The principal question presented is whether he resided within the State of Maryland, in which he filed his petition on May 11, 1959, for at least six months immediately preceding the filing of the petition. The Service concedes that he meets all other requirements.

██ Petitioner raised a preliminary issue—whether the period of residence in the State must immediately precede the date on which the petition is filed. The answer to that question is "yes". One of the purposes of the requirement is to facilitate the investigation of a petitioner's character, attachment to the principles of the Constitution, and the like, and to facilitate the presentation of testimony to the court which will hear the case, if any doubt exists as to his qualifications. See Rosenberg v. United States, 3 Cir., 60 F.2d 475, certiorari denied 287 U.S. 645, 53 S.Ct. 91, 77 L.Ed. 558, dealing with a similar provision in another section.

Sec. 101(a) (33) of the Act, 8 U.S.C.A. § 1101(a) (33), states: "The term 'residence' means the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent."[2] This definition is a "codification of judicial constructions of the term 'residence' as expressed by the Supreme Court of the United States in Savorgnan

---

1. 8 U.S.C.A. § 1430(a) reads as follows: "(a) Any person whose spouse is a citizen of the United States may be naturalized upon compliance with all the requirements of this subchapter except the provisions of paragraph (1) of section 1427(a) of this title if such person immediately preceding the date of filing his petition for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least three years, and during the three years immediately preceding the date of filing his petition has been living in marital union with the citizen spouse, who has been a United States citizen during all of such period, and has been physically present in the United States for periods totaling at least half of that time and has resided within the State in which he filed his petition for at least six months."

2. 8 U.S.C.A. § 1101(a) (33) continues: "* * * Residence shall be considered continuous for the purposes of sections

v. United States, (338 U.S. 491, 505, (1950).) 70 S.Ct. 292, 94 L.Ed. 287." H.R. 1365, U.S.Code Congressional & Administrative News, 82d Cong., 2d Sess., 1952, p. 1653, at p. 1684. Residence "implies something more than mere physical presence and something less than domicile * * *." Guessefeldt v. McGrath, 342 U.S. 308, 312, 72 S.Ct. 338, 341, 96 L.Ed. 342. In Toy Teung Kwong v. Acheson, D.C.N.D.Cal., 97 F.Supp. 745, 747, after quoting from the Savorgnan opinion, Judge Murphy said: "* * * it is a question of fact in each instance as to *which* is the 'principal dwelling place'. The court's use of 'actual residence' must be viewed from that perspective rather than that contended for by the government in the immediate case. 'Actual residence' is not synonymous with physical presence, nor does the court hold that a sojourn abroad of any duration, however transient, or whatever the purpose forfeits domestic residence. The issue of fact still remains. See also Acheson v. Yee King Gee, 9 Cir., 184 F.2d 382; Wong Gan Chee v. Acheson, D.C., 95 F.Supp. 816."

 Petitioner was born in Egypt in 1922 of Greek parents. In 1939 he went with them to Greece, where he remained until 1946, when he returned to Egypt for a short time. He was employed by a Greek company in India in 1947 and in Pakistan in 1949. On April 26, 1954, he married Bernita Snyder, a citizen of the United States, in Karachi, Pakistan, where she was employed by the United States Government. On December 4, 1954, they came to the United States from Pakistan and petitioner was lawfully admitted to this country as a nonquota immigrant. The parents of petitioner's wife then had a home at 129 Jefferson Street, N. W., Washington, D. C. Petitioner and his wife lived there with her parents while he sought employment.

In March, 1955, petitioner was employed by the Phillip Morris Tobacco Company to work in its overseas division. Until August, 1957, petitioner was being trained for an assignment overseas and was employed temporarily in Richmond, Virginia, and in New York City. From August, 1957, until September, 1958, petitioner was employed by the tobacco company in Panama and resided there with his wife. His wife then became ill, he requested an assignment in the continental United States, and on September 24, 1958, he and his wife returned to this country.

Meanwhile, in 1956, the parents of Mrs. Castrinakis had moved from the District of Columbia to a home at 10014 Renfrew Road, Silver Spring, Maryland. Petitioner was granted a vacation or leave of absence from his employment for about six weeks when he came to Maryland from Panama in September, 1958. During that leave, he resided with his wife at the home of her parents in Maryland. In the latter part of November, 1958, petitioner resumed work for the tobacco company at an office in New York City. For several weeks he lived in hotels in New York from Monday until Friday and traveled week-ends to Silver Spring, where his wife remained. His hotel bills in New York and expenses in commuting between New York and Silver Spring were paid by his employer, which customarily pays for the living accommodations of employees assigned to a locality on a temporary or transient basis. Some time between Thanksgiving and Christmas, 1958, Mrs. Castrinakis joined her husband in New York, where they lived in a hotel at the expense of his employer. Most week-ends they returned to the home in Maryland. They spent the Christmas and New Year holidays of 1958 at the home in Maryland, although petitioner returned to New York between Christmas and New Year's Day.

1482 and 1484 of this title where there is a continuity of stay but not necessarily an uninterrupted physical presence in a foreign state or states or outside the United States."

Sections 1482 and 1484 deal with loss of nationality and are not involved in this case.

In February, 1959, petitioner's employer transferred him to Richmond, Virginia. For about two weeks his wife stayed at the home in Maryland and petitioner lived at a hotel in Richmond from Monday until Friday at the expense of his employer. He was in Maryland each week-end. After petitioner had been in Richmond for about two weeks, his wife came there and they rented a furnished house. His employer paid the rent for this house. He and his wife drove to Silver Spring on most week-ends. Petitioner was still occupying the house rented by his employer in Richmond when he filed his petition for naturalization on May 11, 1959. Since May, 1959, he has been sent by his employer to Montreal, Canada, where he and his wife now live.

From September, 1958, when petitioner and his wife returned from Panama, until after May 11, 1959, some of their household goods were kept at her parents' home in Maryland and some were stored in New York, so that they could be conveniently shipped if, as expected, he was assigned to work in a foreign country.

Since petitioner first came to the United States, he has maintained an account with the First National Bank of Washington, D. C. During the entire period involved, from November 11, 1958, until May 11, 1959, 10014 Renfrew Road, Silver Spring, Maryland, has been the residence of petitioner registered with that bank, registered with his employer, used for charge accounts, given on his 1958 Federal Income Tax Return (which was filed at Baltimore, Maryland), and on the temporary visa issued by the Canadian Government when he entered Canada.

Applying the statutes and principles set out above to the facts of this case, I conclude that petitioner had his place of general abode, his principal actual dwelling place, at 10014 Renfrew Road, Silver Spring, Maryland, from September, 1958, when he left Panama, to May 11, 1959. He therefore "resided" within the State in which he filed his petition for more than six months immediately preceding the date of the filing of his petition. It is not necessary to decide in this case whether the requirements of sec. 1430 (a) could be met by a person who was seldom or never at his claimed residence during the critical period of six months.

Petitioner may be naturalized upon taking the required oath.