Owen Ray KNUTESON, Plaintiff and Appellant,

v.

Jacqueline A. KNUTESON, Defendant and Respondent.

No. 16924.

Supreme Court of Utah.

Nov. 10, 1980.

---

1. U.C.A., 1953, Section 41–6–73.

2. *Jensen v. Eddy*, 30 Utah 2d 154, 514 P.2d 1142; *Town & Country Disposal Inc. v. Martin*, Utah, 563 P.2d 195.

Walter R. Ellett, Murray, for plaintiff and appellant.

H. Delbert Welker, Salt Lake City, for defendant and respondent.

HENRIOD, Retired Justice:

This is an appeal from an order denying Mr. Knuteson's petition to terminate alimony awarded to Mrs. Knuteson in a divorce action in which she also was awarded the home and custody of a teenaged boy and girl.

At the time of Mr. Knuteson's petition, he was considerably in arrears in his alimony payments, which left Mrs. Knuteson without funds. In turn, this resulted in the utility companies cutting off the light, gas, and water. Mrs. Knuteson had no income, nor did her fifteen year old son, who was pretty much disabled with a knee injury, and who was a near drop–out from high school. The family, nearly destitute, accepted an offer of one Gay Conder, a friend, who lived a few doors downstreet, inviting her and her family to come and live at his house. They took with them the bare necessities, to—wit: beds, a refrigerator and dressers,–plus a stove, which latter was nec-

essary, so Mrs. Knuteson said, because Conder's stove wouldn't work, and there was nothing on the back burner,–and it would have taken "an awfully long time to fix dinner on one burner." Everything else was left at the old homestead.

All the above undisputedly was accomplished, in a wholesome spirit of "animus revertendi." To Mrs. Knuteson's everlasting credit, during the time she and her teenagers stayed in Conder's home, a period of two months and ten days, give or take a little, she garnished her prior spouse's funds, and obtained some money in record time. As soon as she received these funds, and after she candidly confessed the sex relationship with Gay Conder, she took herself, her son, her daughter, the beds, refrigerator, the dressers,–and even the stove, back home. There she met the process server who invited her back to court, to the same judge who had given her the home, who now gave her a benevolent reprieve from Mr. Knuteson's demand for termination of the alimony awarded against him, which he had not paid anyway, save by compulsion of a garnishment. Mr. Knuteson now claims repayment of such garnished funds, *together with relief from further alimony payments because of Mrs. Knuteson's amorous goings on with Gay,–* all of which he claims as grounds for terminating the alimony under the provisions of a 1979 addendum to an existing statute of ancient vintage, which now says:

"(3) Any order of the court that a party pay alimony to a former spouse shall be terminated upon application of that party establishing that the former spouse is *residing* with a person of the opposite sex unless it is further established by the person receiving alimony that the relationship or association between them is without any sexual contact."

The first obstacle to be met by Mr. Knuteson's claim of a defense to a court–required alimony obligation to pay his former and presumably dutiful wife, is that he has little or no standing in a court of equity to

point the finger of scorn at the mother of his children, while he, himself, flouted the interdiction of the court in which he now seeks asylum and solace, and absolution from his bounden duty. For a piece of silver, he overlooks the fact that the only evidence of promiscuity statutorily justifying his asserted relief from the duty to support his spouse, was his own contempt for a court order which appears to have forged the first link in a chain of circumstances, that led to a second link,–the impecuniosity of his wife because of the first, followed by the not too unpredictable third link,–that of seeking a haven of security and sustenance with Conder. This last event thereupon caused the amorous affinity of Mrs. Knuteson for Conder, and his for her, which Mr. Knuteson now seeks to employ as a balm for his own self–inflicted wounds. The whole chain of events provoked the ultimate "causa causans,"–a locked door at the courthouse, which needs no opening to one seeking equity but not doing it.

█ Other and perhaps more cogent and realistic reasons to affirm the trial court's decision to the effect that Mrs. Knuteson was not a "resident" in Gay Conder's home in the statutory sense, is that she expended much of her efforts in the daytime at her own home doing chores and yard work; and secondly, the wording of the statute does not appear to cover a temporary stay at another's home. This latter reason is furnished by defendant's counsel himself, who says in his brief that Webster's New Twentieth Century Dictionary, 2nd. Edition, defines the word "reside" as: To dwell *permanently* or for a *length of time*; to have a *settled* abode for a time."

The evidence clearly indicates that as soon as the emergency requiring a decent, and necessary continued survival was over, she and her children and her furniture,–and even the kitchen stove found their way back home,–all of which movement forth and back would not have occurred, according to the undisputed evidence, had defendant paid his alimony as ordered. It is highly significant that as soon as Mrs. Knuteson could resume her normal life in her own home, after the forced payment by Mr. Knuteson of the alimony awarded, she did so.

█ In our opinion the trial court correctly applied the statute, which seems to be a salutary one, for cases in which it is designed to prevent unconscionable servitude to an undeserving divorced spouse. However, in a case where the complaining spouse, in contempt of a court order, creates the very situation upon which he professes his own innocence, the statute is a stranger. Nor does the statute seem to apply to an indiscretion invited by a temporary emergency situation occasioned by unlivable conditions that is apt to happen for example as might be the case in a bomb shelter or in a home to which one may have been removed in a dangerous area evacuation operation.

It is unfortunate that this case is the first to be decided under the new statute, since it is not at all the type of case that has multiplied a thousand fold in the past few years and toward which the statute is and should be directed, to prevent injustice to a spouse who frequently pays through the nose, so to speak, to an undeserving ex– mate. This case, therefore, is not an attack on the statute, but only an interpretation of its wording.

The trial court is affirmed with costs on appeal awarded to neither party.

CROCKETT, C. J., and HALL, WILKINS and STEWART, JJ., concur.

MAUGHAN, J., does not participate herein.