946 P.2d 620

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Remigio ARCHULETTA, aka Renigio, aka Archie, Defendant–Appellant.**

**No. 18801.**

Intermediate Court of Appeals of Hawai'i.

Sept. 26, 1997.

Frederick W. Gregg, Jr., on the brief, Kailua–Kona, for defendant-appellant.

Paul C. Whalen, Deputy Prosecuting Attorney, County of Hawai'i, on the brief, Kealakekua, for plaintiff-appellee.

Before BURNS, C.J., and ACOBA and KIRIMITSU, JJ.

BURNS, Chief Judge.

The defendant was found guilty of the crime of Abuse of Family and Household Members. The question is whether there is substantial evidence that, at any time prior to the abuse, the defendant and the victim were "persons jointly residing or formerly residing in the same dwelling unit." The answer is yes. The substantial evidence is the victim's testimony that the defendant lived with her at her dwelling unit "probably three to four nights a week" during their "[b]oyfriend-girlfriend" relationship from February 14, 1994 to Thanksgiving 1994. The substantial evidence that the defendant had a different residence during those times when he was not using the victim's dwelling unit as his residence is not a defense.

## BACKGROUND

Defendant–Appellant Remigio Archuletta (Archuletta) appeals the family court's February 14, 1995 judgment convicting him of Abuse of Family and Household Members, Hawai'i Revised Statutes (HRS) § 709–906 (1993) and sentencing him to imprisonment for 60 days with credit for time served; suspending 58 days for a period of one year so long as Archuletta remains arrest- and conviction-free or is in compliance with counseling orders; placing him on probation for one year; requiring him to obtain a substance abuse assessment and to attend the Alterna-

tives to Violence program or other appropriate program; subjecting him to random alcohol testing within three hours after request; and prohibiting him from owning or possessing firearms and ammunition. We affirm.

## RELEVANT EVIDENCE

On July 9, 1994, in the parking lot of the Mini Mart in Ka'u, County of Hawai'i, Archuletta was extremely intoxicated but still wanted more beer. Kelly Rosewell (Rosewell) had not been drinking. Rosewell drove Archuletta in Archuletta's truck to Rosewell's house. As Rosewell was getting ready to turn the truck up her driveway, Archuletta tried to take the keys to the truck. When Rosewell reached for the keys herself, Archuletta grabbed and punched Rosewell's head at least four times, causing Rosewell to suffer a black-eye which lasted more than three weeks. When asked the reason why Archuletta wanted the keys, Rosewell answered, "I was driving and he reached over to grab—and they turned him down for a beer. And he wanted a beer and I didn't want that to happen."

Rosewell decided to drive Archuletta back to the Mini Mart, intending to leave him with some of his friends. Upon arriving at the Mini Mart, Rosewell told Police Officer Harry Coy (Officer Coy) about the abuse and Archuletta was arrested. At the time of the arrest, Officer Coy noted that Archuletta was so intoxicated that he had trouble standing. Later, when Officer Coy asked Archuletta for his residence and mailing address, Archuletta responded that his residence was at "Lehua and Palm" and his mailing address was P.O. Box 6654, Captain Cook. Both the residence and the mailing addresses that Archuletta gave to the police were the same as Rosewell's in Hawaiian Ocean View, Ka'u.

Rosewell testified that she and Archuletta had a "[b]oyfriend-girlfriend" relationship from February 14, 1994 to Thanksgiving 1994. During this period, Archuletta lived with Rosewell at Rosewell's house on Lehua and Palm "probably three to four nights a week." Archuletta could stay at the house whenever he wanted, and he and Rosewell shared a bedroom when he stayed there. During this time, Rosewell became pregnant with Archuletta's child. Rosewell testified that "[Archuletta] had asked [her] to marry him about March or April." Rosewell and Archuletta did not share their bills or have a joint bank account. When asked where she and Archuletta lived, Rosewell testified that she lived at "Lehua Lane, Palm Parkway[,]" that Archuletta lived at "Paradise Parkway, below Lei[,]" and that they had different mailing addresses.

At the trial on January 11, 1995, Joseph Richard Albrecht, a friend of Archuletta's, testified in relevant part as follows:

Q. Mr. Albrecht, do you know where Mr. Archuletta resides?

A. Same place I do.

Q. Which is where?

A. The top of Paradise, the lots, the secondlot [sic] from there, on the end of Paradise Grove in Ocean View.

\* \* \*

Q. Who owns the property—that lot that you reside on?

A. I believe Mr. Archuletta does.

\* \* \*

Q. When did you guys move into the house?

A. It's not a house. It's just a foundation at this point.

Q. So where do you folks live then?

A. We live—he has his tent and I—I have my tent.

## RELEVANT STATUTE

HRS § 709–906 states in relevant part as follows:

**Abuse of family and household members; penalty.** (1) It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member,

. . .

For the purposes of this section, "family or household member" means spouses or former spouses, parents, children, and persons jointly residing or formerly residing in the same dwelling unit.

### RELEVANT STANDARD OF REVIEW

We have long held that evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; ... The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

" 'Substantial evidence' as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a [person] of reasonable causation to support a conclusion."

*In Interest of Doe,* 76 Hawai'i 85, 92–3, 869 P.2d 1304, 1311, 1312 (1994) (citations omitted).

### ISSUE

The dispositive question on appeal is whether there is substantial evidence that, at any time prior to the abuse on July 9, 1994, Archuletta and Rosewell were "persons jointly residing or formerly residing in the same dwelling unit." The answer is yes.

### DISCUSSION

█ HRS § 709–906(1) requires that the defendant and the victim had, at the time of the offense, past or present, joint residence in the same dwelling unit. "Residence implies something more than mere physical presence and something less than domicile." Black's Law Dictionary 1309 (6th ed.1990) (citing *Petition of Castrinakis,* 179 F.Supp. 444, 445 (D.C.Md.)). " 'Residence' is not synonymous with 'domicile,' though the two terms are closely related; a person may have only one legal domicile at one time, but he may have more that one residence." *Black's Law Dictionary* 1309 (6th ed.1990) (citing *Fielding v. Casualty Reciprocal Exchange,* 331 So.2d 186, 188 (La.App.)).

The case of *State v. Tripp,* 71 Haw. 479, 795 P.2d 280 (1990), presented slightly different facts but the same issue. In the *Tripp* case, Tripp abused Burke on November 21, 1988 in the parking structure of the Kapiolani Medical Center where Burke, who was pregnant and overdue for delivery, was going for a caesarean delivery. Burke testified that she and Tripp lived together from December 1987 until March 1988 in a house at 744 'Ōnaha Street where Burke was housesitting while the owner was on the mainland. Burke testified that Tripp kept clothes there, did laundry there, had meals there, and slept there, and that these activities occurred on a continuous basis. During this time, Burke had become pregnant. Burke also used her grandfather's house at 2613 Gardenia Street as a residence address. The Hawai'i Supreme Court concluded that Burke's testimony was substantial evidence that Tripp and Burke had formerly resided in the same dwelling unit.

█ In Archuletta's case, we conclude that Rosewell's testimony that, from February 14, 1994 to Thanksgiving 1994, Archuletta lived with Rosewell at her Lehua and Palm residence "probably three to four nights a week" is substantial evidence that, at the time of the abuse, Archuletta and Rosewell were "persons jointly residing or formerly residing in the same dwelling unit." The substantial evidence in the record that, at the time of the abuse, Archuletta had two residences is not a defense. The substantial evidence that one of Archuletta's two residences was Rosewell's dwelling unit at Lehua and Palm is sufficient to support the implicit finding that, at the time of the abuse, Archuletta and Rosewell were "persons jointly residing or formerly residing in the same dwelling unit."

### CONCLUSION

Accordingly, we affirm the family court's February 14, 1995 judgment convicting Archuletta of Abuse of Family and Household Members, HRS 709–906(1).