2005 UT App 37

Andrea N. KEENE, Petitioner
and Appellee,

v.

Ashley J. BONSER, Respondent
and Appellant.

No. 20030841–CA.

Court of Appeals of Utah.

Jan. 27, 2005.

694

James A. McIntyre, McIntyre & Golden LC, Salt Lake City, for Appellant.

Randall T. Gaither, Salt Lake City, for Appellee.

Before Judges GREENWOOD, JACKSON, and ORME.

## OPINION

ORME, Judge:

¶ 1 Ashley J. Bonser appeals from the issuance of a protective order under Utah's Cohabitant Abuse Act, which is codified at Utah Code Ann. §§ 30–6–1 to—15 (1998 & Supp.2004). Specifically, Bonser appeals the district court's conclusion that he was a "cohabitant" under the Act and therefore subject to its provisions. We reverse and remand.

## BACKGROUND

¶ 2 Appellant Bonser claims legal residence in Mountain View, Wyoming, a fifty-minute drive from Manila, Utah, where he would often launch his boat in order to fish on Flaming Gorge Reservoir. Bonser met Appellee Andrea N. Keene in February 2003 in Manila, where Keene lived. In March of 2003, the parties began an intimate relationship, with Bonser staying at Keene's trailer home when he was in Manila. Although the parties dispute just how often and how long

Bonser would stay with Keene at her trailer,[1] it is evident that the parties maintained a relationship of sorts from March through May of 2003.

¶ 3 On June 4, 2003, Keene filed a verified petition for a protective order in district court, alleging domestic violence or abuse under Utah's Cohabitant Abuse Act. *See* Utah Code Ann. §§ 30–6–1 to—15 (1998 & Supp.2004). The district court issued an ex parte protective order pursuant to Utah Code section 30–6–4.2 to be served on Bonser. Bonser voluntarily presented himself in Utah to be served with the order. The matter came before the district court on September 5, 2003, for an evidentiary hearing, following which the court announced its ruling from the bench. The court found that Bonser "had resided in the same residence" as Keene in Manila, Utah, making him a "cohabitant" under the Act, and that domestic violence or abuse had occurred. The court then issued a protective order under the Act. Bonser appeals the issuance of the protective order.[2]

## ISSUES AND STANDARDS OF REVIEW

¶ 4 Bonser raises three arguments against the district court's conclusion that he was a "cohabitant" under Utah's Cohabitant Abuse Act. Bonser challenges the court's legal conclusion that he "resided in the same residence" as Keene and was thus a "cohabitant" under the Act. *See* Utah Code Ann. § 30–6–1(2)(f) (Supp.2004). Bonser also argues that the district court failed to make the necessary factual findings to sufficiently support its legal conclusion that he "had resided in the same residence" as Keene. Finally, anticipating the possibility of remand for entry of adequate findings, Bonser contends the evidence presented to the district court could not adequately support any factual findings

that would lead the court to the legal conclusion that he was a "cohabitant" as defined in the Act, entitling him to judgment in his favor as a matter of law.

¶ 5 "Generally, we review a trial court's legal conclusions for correctness, according the trial court no particular deference." *Orton v. Carter*, 970 P.2d 1254, 1256 (Utah 1998). Moreover, "[i]t has long been the law in this state that conclusions of law must be predicated upon and find support in the findings of fact." *Gillmor v. Wright*, 850 P.2d 431, 436 (Utah 1993). Otherwise, "[t]he failure to enter adequate findings of fact on material issues may be reversible error." *Reid v. Mutual of Omaha Ins. Co.*, 776 P.2d 896, 899 (Utah 1989).

## THE MEANING OF "COHABITANT" UNDER UTAH'S COHABITANT ABUSE ACT

¶ 6 Bonser challenges the court's legal conclusion that he "had resided in the same residence" as Keene and was thus a "cohabitant" subject to the Cohabitant Abuse Act's provisions. *See* Utah Code Ann. § 30–6–1(2)(f) (Supp.2004). He specifically attacks the district court's broad interpretation of the Act's language in concluding he was a "cohabitant."[3] As a result, we examine the meaning of "cohabitant" as it is defined under the Act.

¶ 7 The Utah Supreme Court has noted that "the term 'cohabitation' does not lend itself to a universal definition that is applicable in all settings." *Haddow v. Haddow*, 707 P.2d 669, 671 (Utah 1985). Thus, "the meaning of [cohabitation] depends upon the context in which it is used." *Id.* Utah case law has discussed the meaning of cohabitation in a variety of factual contexts. *See State v.*

---

1.  The district court made no findings of fact about when, how long, and how often Bonser would stay with Keene.

2.  Bonser does not question on appeal the district court's conclusion that domestic violence or abuse occurred. Therefore, so long as Bonser qualifies as a "cohabitant" under its provisions, the court had adequate grounds upon which to issue a protective order under Utah's Cohabitant Abuse Act.

3.  The court summarily stated that it "would interpret [the definition] as a broad definition to cover folks who are entitled to protective orders that have resided or are residing in the same residence. . . . Mr. Bonser and Ms. Keene were residing or had resided in the same residence. . . . That's pretty clear I think under the statute."

*Green,* 2004 UT 76, ¶ 48, 99 P.3d 820 (explaining that, in the context of a criminal bigamy prosecution, the dictionary definitions of to " 'live together in a sexual relationship, especially when not legally married' " and to " 'dwell together as, or as if, husband or wife' " were both acceptable definitions of the word "cohabit") (citations omitted); *Haddow,* 707 P.2d at 671–72 (defining "cohabitation" in an alimony termination proceeding as " '[t]o live together as husband and wife' " with the key elements being "common residency and sexual contact evidencing a conjugal association") (citations omitted).

¶ 8 In the context of Utah's Cohabitant Abuse Act, the Legislature has given the term specific meaning by expressly defining what a cohabitant is for purposes of the Act. The Act defines a "cohabitant" as

> an emancipated person ... or a person who is 16 years of age or older who: (a) is or was a spouse of the other party; (b) is or was living as if a spouse of the other party; (c) is related by blood or marriage to the other party; (d) has one or more children in common with the other party; (e) is the biological parent of the other party's unborn child; or (f) resides or has resided in the same residence as the other party.

Utah Code Ann. § 30–6–1(2)(a)–(f). We have previously determined that the application of this definition is confined to the context of cohabitant abuse.[4] *See Hill v. Hill,* 968 P.2d 866, 868 (Utah Ct.App.1998) (concluding the Act's definition of "cohabitant" is inapplicable to alimony termination because "the definitions in [the Act] are to be used solely for purposes of the Cohabitant Abuse Act," and seeing "no legislative intent to abrogate the [Utah] case law defining cohabitation" in other contexts). We have also previously suggested that the Utah Legislature has adopted a broader view of cohabitation in the cohabitant abuse context than Utah case law has in other contexts. *See id.* at 868–69 (refusing to apply broader cohabitant abuse definition to terminate alimony where former spouse had a child with another man). However, no appellate court in Utah has specifically addressed just how broadly the Act's definition of "cohabitant" is to be construed in the context of "resides or has resided in the same residence."[5] Utah Code Ann. § 30–6–1(2)(f).

■ ¶ 9 Bonser argues for a narrow construction of "cohabitant" under the Act, asserting that the Legislature carefully chose to define "cohabitant," using the terms "resides," "resided," and "residence" because they all have well-established meanings. He suggests that the Act's plain language, therefore, defines a cohabitant in terms of one's legal residency or domicile, as emphasized by the redundancy in the phrase "resides or has resided in the same residence." In other words, Bonser believes he would not be a cohabitant under the residency prong of the statute if he would not qualify for a Utah resident fishing license, *see* Utah Code Ann. § 23–13–2(37)(a) (2003) (defining a "[r]esident" for purposes of hunting and fishing licenses); would not qualify for a Utah driver license, *see* Utah Code Ann. § 53–3–205(9)(a) (Supp.2004) (requiring an applicant for a Utah driver license to "have a Utah residence address" and to provide it upon application); could not be sued in Utah under a venue provision permitting suit in the county where defendant resides, *see* Utah Code Ann. § 78–13–7 (2002) (providing for venue to be proper in the county in which "any defendant resides"); and could not register to vote in Utah. *See* Utah Code Ann. § 20A–2–101(1)(b)

---

4. The same or a substantially similar definition appears in a number of closely related contexts. It appears in Utah's Insurance Code. *See* Utah Code Ann. § 31A–21–501(2)(a)–(e) (2003) (contained in provision entitled "Domestic Violence or Child Abuse—Insurance Practices"). The definition is also expressly adopted by Utah's Cohabitant Abuse Procedures Act, *see* Utah Code Ann. § 77–36–1(1) (2003), and Utah's criminal code provision dealing with "Offenses Against the Person." *See* Utah Code Ann. § 76–5–109.1(1)(a) (2003).

5. The majority of cases that have treated the Cohabitant Abuse Act have presented factual scenarios where the parties are obviously "cohabitants" under the definition because they were spouses of many years or because there was no dispute that they were "cohabitants." *See, e.g., Bailey v. Bayles,* 2002 UT 58, ¶ 22, 52 P.3d 1158; *Strollo v. Strollo,* 828 P.2d 532, 534 (Utah Ct. App.1992).

(2003) (requiring a person to "ha[ve] been a resident of Utah for at least the 30 days immediately before the election" in order to register to vote). *See also id.* § 20A–2–105 (defining a "resident" for purposes of Utah election law). We do not agree that "cohabitant," as defined in the Act, is confined to such a narrow, legalistic interpretation.

¶ 10 In interpreting statutory provisions, including definitions, "[w]e look first to the plain language of the statute to discern the legislative intent. . . . 'Only when we find ambiguity in the statute's plain language need we seek guidance from the legislative history and relevant policy considerations.' " *Gohler v. Wood,* 919 P.2d 561, 562–63 (Utah 1996) (citations omitted). In construing the plain language of a statute, words " 'which are used in common, daily, nontechnical speech, should, in the absence of evidence of a contrary intent, be given the meaning which they have for laymen in such daily usage.' " *Mesa Dev. Co. v. Sandy City Corp.,* 948 P.2d 366, 369 (Utah Ct.App.1997) (quoting *Government Employees Ins. Co. v. Dennis,* 645 P.2d 672, 675 (Utah 1982)). As a result, courts often refer to the dictionary to define statutory terms. We follow this approach today and adopt common, nontechnical, dictionary-definition meanings of the words used to define "cohabitant" under the Act.

¶ 11 The Utah Supreme Court has previously used the dictionary to define the word "reside" as "['t]o dwell permanently or for a length of time; to have a settled abode for a time.' " *Knuteson v. Knuteson,* 619 P.2d 1387, 1389 (Utah 1980) (emphasis and citation omitted). We have also used the dictionary to define "reside" as " 'to dwell permanently or continuously.' " *Travelers/Aetna Ins. Co. v. Wilson,* 2002 UT App 221,¶ 13, 51 P.3d 1288 (quoting Webster's Third New International Dictionary 1931 (1986)), *cert. denied,* 59 P.3d 603 (Utah 2002). We find these nontechnical definitions of "reside" pertinent for purposes of the Act. "Residence," on the other hand, has been used and defined differently in a variety of Utah statutes and cases. Therefore, we define "residence" anew for purposes of the Act, but in a manner fully consistent with our view of

the meaning of "reside," as "a temporary or permanent dwelling place, abode, or habitation to which one intends to return as distinguished from a place of temporary sojourn or transient visit." Webster's Third New International Dictionary 1931 (1993). Under our definition, it is important to distinguish "residence" from "domicile" since residence usually "just means bodily presence as an inhabitant in a given place," while domicile usually "requires bodily presence plus an intention to make the place one's home." Black's Law Dictionary 1310 (7th ed.1999). It is wholly possible that, for purposes of the Act, "[a] person thus may have more than one residence at a time but only one domicile." *Id.*

¶ 12 Under the view we take of subpart (f) of the Act's definition of "cohabitant," a court must make a factual determination, on a case-by-case basis, whether a perpetrator or victim of domestic violence or abuse "resides or has resided in the same residence as the other party" involved. Utah Code Ann. § 30–6–1(2)(f) (Supp.2004). This factually driven analysis must look into the relationship the person has not so much with the other person as with the purported "residence." A court must make findings on the extent to which the person has "settled" himself or herself in that place or how "temporar[ily] or permanent[ly]" or, at least, how "continuously" they "dwell" there. A court must also make findings that show that the parties treated the place as a "temporary or permanent dwelling place, abode, or habitation," focusing on evidence that shows "one intends to return" to the place versus treating it as "a place of temporary sojourn or transient visit."

¶ 13 A court's analysis of whether someone is a "cohabitant" can be informed by looking at a variety of nonexclusive factors that reflect some general indicia of cohabitation. For example, in the alimony termination context, the Utah Supreme Court has examined the amount of time one spends at a purportedly shared abode and the amount of effort expended in its upkeep. *See Knuteson,* 619 P.2d at 1389 (finding woman was not a resident at boyfriend's

abode because "she expended much of her efforts in the daytime at her own home doing chores and yard work"). In the same context, the Court has also found persuasive an indication of whether a person is free to come and go as he pleases, treating the place as if it were his own home. *See Haddow v. Haddow,* 707 P.2d 669, 673 (Utah 1985) ("[A] resident will come and go as he pleases in his own home, while a visitor, however regular and frequent, will schedule his visits to coincide with the presence of the person he is visiting."). Likewise, the Court has also considered whether there has been a sharing of living expenses or sharing of financial obligations for the maintenance of a household, *see id.* at 673–74; whether there has been "sexual contact evidencing a conjugal association," *id.* at 672; and whether furniture or personal items have been moved into a purported residence. *See id.* at 673.

¶ 14 Although a more technical and narrow inquiry, in the context of divorce jurisdiction the determination of whether a person was an "actual or bona fide resident," [6] Utah Code Ann. § 30-3-1 (1998), has been informed by such factors as "voting, owning property, paying taxes, having family in the area, maintaining a mailing address, being born or raised in the area, working or operating a business, and having children attend school in the forum." *Bustamante v. Bustamante,* 645 P.2d 40, 41 (Utah 1982). *See also Travelers/Aetna Ins. v. Wilson,* 2002 UT App 221, ¶ 14, 51 P.3d 1288 (adopting same factors in insurance coverage context). With the aid of evidence illuminating such factors, a court may make appropriately detailed findings of fact that will logically lead to a conclusion of whether or not a person is a "cohabitant" under the Cohabitant Abuse Act's definition, insofar as it is tied to residing at a residence.

¶ 15 While the above factors help to provide reliable indicia of whether a victim or

perpetrator of domestic violence or abuse "resides or has resided in the same residence" for purposes of the Act, the court must also consider the evidence in light of the purpose behind the Act. Other states have recognized the expansive reach intended by legislatures in enacting domestic violence and abuse statutes. *See, e.g., State v. Kellogg,* 542 N.W.2d 514, 517 (Iowa 1996) (recognizing the broadening of its domestic abuse statutes "to protect others[, beyond spouses,] from abuse occurring between persons in a variety of significant relationships"); *State v. Williams,* 79 Ohio St.3d 459, 683 N.E.2d 1126, 1129 (1997). The courts of other states have broadly construed what it means to reside or have resided with a person. For example, the Hawaii Court of Appeals held in *State v. Archuletta,* 85 Hawai'i 512, 946 P.2d 620 (Ct.App.1997), that its domestic abuse statute that defines cohabitants as " 'persons jointly residing or formerly residing in the same dwelling unit,' " was broad enough to encompass a man who stayed three to four nights a week at his girlfriend's residence while also maintaining his own residence. *Id.* at 620 (quoting Haw. Rev.Stat. § 709–906(1)(1993)). The court specifically held that "substantial evidence in the record that, at the time of the abuse, Archuletta had two residences is not a defense." *Id.* at 622. In a similar vein, the California Court of Appeal, in *People v. Moore,* 44 Cal.App.4th 1323, 52 Cal.Rptr.2d 256 (1996), held that the perpetrator of domestic abuse "cannot immunize himself from criminal liability merely by living part-time elsewhere with one or more persons while continuing to reside the rest of the time with [another] partner and maintaining a substantial relationship with that person." *Id.* at 264. The court found it possible for the defendant to be cohabiting simultaneously with two or more people at different locations.[7] *See id.*

---

**6.** In this context an " 'actual or bona fide resident' " means "something more than a mere 'legal residence.' " *Kidman v. Kidman,* 109 Utah 81, 164 P.2d 201, 202 (1945). *See also Munsee v. Munsee,* 12 Utah 2d 83, 363 P.2d 71, 72 (1961) (defining " 'actual residence' " as "something more than that 'home feeling' ").

**7.** It would also be possible under our construction of the Utah Act for a person to be a "cohabi-

tant" under the Act with multiple people simultaneously. Thus, the woman from Moscow, Idaho, who has two boyfriends in Utah, may be a cohabitant with the one in Kaysville while she is at the same time a cohabitant with the one in Provo. If her conduct manifests a great enough degree of residential continuity with both, she can be a "cohabitant" and "reside" with each for purposes of the Act.

¶ 16 In sum, when determining whether a person is a "cohabitant" under the Act, and whether that person "resides or has resided in the same residence," the court must make detailed findings of fact. When making the findings of fact, the court should take into account the definitions of the words "reside" and "residence" outlined above, it should consider a variety of factors that bear on cohabitation, and at the same time it should consider the evidence in light of the purpose behind the Act.

## LACK OF FACTUAL FINDINGS
## BY THE DISTRICT COURT

¶ 17 We now consider whether Bonser qualified as Keene's "cohabitant" under Utah's Cohabitant Abuse Act. Bonser argues that the district court failed to make the necessary factual findings to support its legal conclusion that he "resided in the same residence" as Keene. He also contends that even if the court had made the necessary factual findings, the evidence presented to the district court would not adequately support factual findings that would lead the court to conclude that he was a "cohabitant" as defined in the Act.

¶ 18 "It has long been the law in this state that conclusions of law must be predicated upon and find support in the findings of fact." *Gillmor v. Wright*, 850 P.2d 431, 436 (Utah 1993). Thus, "[r]ule 52(a) of the Utah Rules of Civil Procedure requires the judge in a bench trial to 'find the facts specially and state separately its conclusions of law thereon.' " *Reid v. Mutual of Omaha Ins. Co.*, 776 P.2d 896, 899 (Utah 1989) (quoting Utah R. Civ. P. 52(a)). These "findings must be articulated with sufficient detail so that the basis of the ultimate conclusion can be understood." *Id.* Otherwise, "[t]he failure to enter adequate findings of fact on material issues may be reversible error." *Id.*

¶ 19 The district court failed to set forth any specific findings of fact in support of its conclusion that Bonser was a "cohabitant" under the Act. After hearing testimony and receiving evidence, the court merely concluded from the bench that Bonser was a cohabitant, stating that the court would interpret the definition

> as a broad definition to cover folks who are entitled to protective orders that have resided or are residing in the same residence. I interpret that as meaning not that Mr. Bonser chose to make Utah his [legal] residence.... Mr. Bonser and Ms. Keene were residing or had resided in the same residence, residence being her house trailer with a bedroom and a bed. That's pretty clear I think under the statute.

"Unless the record 'clearly and uncontrovertedly supports' the trial court's decision, the absence of adequate findings of fact ordinarily requires remand for more detailed findings by the trial court." *Woodward v. Fazzio*, 823 P.2d 474, 478 (Utah Ct.App.1991) (quoting *Acton v. Deliran*, 737 P.2d 996, 999 (Utah 1987)). However, "remand is not necessary if the evidence in the record is undisputed and the appellate court can fairly and properly resolve the case on the record before it." *Flying Diamond Oil Corp. v. Newton Sheep Co.*, 776 P.2d 618, 622 (Utah 1989).[8]

¶ 20 "We have canvassed the record in the instant case and find disputed evidence, making affirmance as a matter of law impossible." *Woodward*, 823 P.2d at 478. The record reflects that there are disputes between the parties as concerns the facts that would show whether they "reside[ ] or ha[d] resided" together to a degree that would warrant the conclusion that they were "cohabitants" under the Act. Moreover, the majority of the evidence presented below was testimonial, implicating credibility assessments of each witness's testimony, especially

---

**8.** Thus,

> [a]n appellate court can appropriately apply governing legal standards to undisputed facts to dispose of a matter rather than remanding for a trial court to do so. When credibility is not an issue as to underlying facts or a trial judge has already made necessary credibility assessments, the material facts are not disput-

ed, and there is no additional evidence relevant to the dispositive issues that can or should be adduced.

*State v. Mirquet*, 914 P.2d 1144, 1148–49 (Utah Ct.App.1996) (citation omitted). In such circumstances, "an appellate court is in as good a position as the trial court to apply the governing rules of law to the facts." *Id.* at 1149.

since the testimony is contradictory on several key points. We therefore remand to the district court for the entry of detailed findings on the criteria outlined above, and for the making of legal conclusions and a judgment in conformity therewith. We emphasize, however, that we do not intend our remand to be "merely an exercise in bolstering and supporting the conclusion already reached." *Allred v. Allred,* 797 P.2d 1108, 1112 (Utah Ct.App.1990).

¶ 21 Our consideration of the evidence, using the nonexclusive factors set forth above, further demonstrates why we must remand to the district court to weigh the evidence and sort out the key facts. In examining, for instance, the evidence that indicates what amount of time Bonser may have spent at the purported residence, we see significant differences in the testimony. While it was undisputed that Bonser spent the night at Keene's trailer on multiple occasions during at least the months of April and May of 2003, the record reflects a dispute about the exact number of days Bonser stayed continuously with Keene and just how frequently he visited—or how permanently he had settled in with her. Bonser admitted to only once spending a stretch of at least four days in a row at the trailer—on an occasion when he was ill—and strenuously disputed Keene's assertion that he had been staying with her six to seven days a week throughout the month of April. As a result, the evidence concerning the amount of time Bonser was at Keene's trailer home is in dispute.

¶ 22 Likewise, the evidence that would show whether Bonser moved items of furniture or personal property into the purported residence does not clearly point us in one direction. Keene testified that Bonser kept several items of personal property at Keene's trailer, namely, a television, a DVD player, a clothes dryer, a vacuum cleaner, a Skil saw, his boat, and some articles of clothing, as well as a toothbrush, deodorant, his own special shampoo and conditioner, and a bathrobe. Yet, on cross-examination Keene contradictorily indicated that Bonser had given the dryer and vacuum cleaner to her as gifts and that the television also remained in her possession at the time of trial, leaving some

questions about what was his and what was hers. Bonser testified that the only items of his personal property he brought into the trailer consisted of a bag carrying his clothes and his tackle box, although he did also admit to keeping his father's Skil saw at the trailer and to parking his boat there. He characterized the boat storage as temporary—just until he could get the boat to a local repair shop. Nevertheless, Bonser denied keeping his clothes and other personal items at the trailer, even testifying that Keene had cleaned out a drawer in the trailer for him to put his clothes in, but he declined to use it. Whether the evidence shows that Bonser had moved significant amounts of personal property in with Keene greatly depends on which party's testimony is to be believed. Our review of the trial transcript suggests this factual call could easily go either way.

¶ 23 The same problem exists with the evidence that would show whether Bonser treated the trailer as if it were his own home, or whether he was free to come and go as he pleased. Bonser's testimony seems to indicate that he only stayed at the trailer when Keene was present, but that fact is less than clear. Even more unclear, however, is the testimony about whether Bonser had his own key to the trailer, which would be good evidence of his connection to Keene's trailer as at least a temporary residence. Bonser only admitted in testimony to having possession of a key to the trailer when he would stop at Keene's work to get one from her, if there was a chance he was going to stay at the trailer that night. Keene testified, however, that Bonser had his own key to the trailer. In fact, she went so far as to say that she had never actually given Bonser a key, but that he took the initiative in having a copy made of her key, with her permission. Whether Bonser actually possessed a key to the trailer is further obscured by the parties' differing descriptions of their attempts to return or retrieve keys during the fight that led to the protective order. It is less than clear from the parties' testimony if there was a key to the trailer on Bonser's sister's car keys and how it got there, or whether Bonser actually had a key on his own key ring that he was trying to return to Keene during their final

fight, or whether he was simply trying to get his sister's car keys back from Keene.

¶ 24 We do note that some of the evidence is undisputed, which will simplify the district court's work on remand, but it is not determinative on the issue of whether Bonser is a "cohabitant" under the Act. Such evidence includes: the fact that Bonser contributed a minuscule amount of money to groceries for the two, in what Keene's attorney agreed was a "one-time deal"; Bonser's testimony that he helped care for Keene's minor child, changing her and getting her ready for the day; Bonser's testimony that he never had any intention of living with Keene; the fact that Bonser never received any mail at Keene's trailer and maintained his legal residence at his parents' home in Wyoming; the fact that Bonser never stayed at the trailer during a several-day stretch where Keene was visiting relatives out of state; and the nature of the parties' relationship, which undisputedly had the quality of intimacy that could qualify it as what courts refer to as a conjugal association.

## CONCLUSION

¶ 25 Although the district court was correct in concluding that "resides or had resided in the same residence" under the definition of "cohabitant" has a broader meaning in Utah's Cohabitant Abuse Act than in other contexts, it is not as open-ended as the court apparently envisioned. We have therefore clarified what it means to "reside" in the same "residence" for purposes of the definition under the Act. The inquiry into whether a person is a "cohabitant" under the Act is a fact-sensitive determination that requires a court to make detailed findings of fact, on a case-by-case basis, in reaching its conclusion. Because the district court failed to make findings of fact in support of its conclusion that Bonser was a "cohabitant" for purposes of the Act, and because, in our view, the evidence does not clearly and uncontrovertedly indicate to us that the district court's conclusion was correct, we reverse and remand to the district court for entry of detailed findings on the criteria outlined above, and for the making of legal conclusions and a judgment in conformity therewith.

¶ 26 WE CONCUR: PAMELA T. GREENWOOD and NORMAN H. JACKSON, Judges.