2008 UT App 49

Stacey CORWELL, Petitioner and Appellee,

v.

Rocky CORWELL, Respondent and Appellant.

No. 20061088–CA.

Court of Appeals of Utah.

Feb. 22, 2008.

Randy S. Ludlow, Salt Lake City, for Appellant.

Michael A. Zody, Joanna B. Sagers, and Keri Gardner, Salt Lake City, for Appellee.

Before THORNE, Associate P.J., BENCH and DAVIS, JJ.

OPINION

THORNE, Associate Presiding Judge:

¶ 1 Rocky Corwell appeals from the district court order overruling his objection to a protective order entered against him and in favor of Stacey Hall, formerly Stacey Corwell.[1] We reverse the district court's order and remand this matter for further proceedings consistent with this opinion.

BACKGROUND

¶ 2 Corwell and Hall, both residents of Salt Lake County, Utah, were married in Clark County, Nevada on March 19, 2005. Despite their marriage, Corwell and Hall never resided together. In October 2005, Corwell began residing with another woman, Karlyn Weston, in Salt Lake City, Utah. Shortly thereafter, Corwell alleges, he and Weston began receiving harassing phone calls that they attributed to Hall or her friends or family. These calls stopped around Christmas 2005.

¶ 3 By March 2006, Corwell was seeking to annul his marriage to Hall. To this end, the parties executed a stipulation that was filed in the district court. The stipulation stated,

1. The appellee identified herself as Stacey Corwell in the verified petition initiating this action, and the appellant's notice of appeal also identifies the appellee as Stacey Corwell. We retain the case title as reflected in the petition and the notice of appeal. However, our captioning of the case should not be read to imply any current or former legal status of the parties.

among other agreed-upon facts, that the parties had never resided together, that Hall had induced Corwell to marry her with various promises that were never fulfilled, that the parties had no children together, and that Hall was not currently pregnant by Corwell. The district court entered findings and conclusions incorporating these facts and entered a decree of annulment on March 29, 2006. The annulment decree stated that Corwell was "awarded a Decree of Annulment declaring the marriage to be void ab initio."

¶4 On or about April 17, 2006, after Hall became aware of the annulment, the harassing phone calls to Corwell and Weston allegedly began again. Corwell filed a police report regarding the calls but received at least one more call after that time. Corwell then contacted Hall on or about April 21 and told her that if the calls did not stop he would "punch her in the face." Hall responded by filing a verified petition for protective order in the district court pursuant to Utah's Cohabitant Abuse Act (the Act), *see* Utah Code Ann. §§ 30–6–1 to –15 (2007). In her petition, Hall asserted that she and Corwell were still married, that she was seeking an annulment from Corwell, and that Corwell was violently opposed to the annulment.

¶5 Corwell responded to Hall's petition, providing evidence of the parties' annulment and asserting that Hall was in fact harassing and stalking him and Weston. The commissioner assigned to the matter held a hearing and recommended the entry of a protective order based on Corwell's threat to Hall. The district court entered the recommended order on May 24, 2006. Corwell filed an objection, *see id.* § 30–6–4.3(1)(e) (allowing objection to a protective order when the hearing on the petition is before a commissioner), arguing that he and Hall were not cohabitants as that term is defined in the Act because of their annulment and that the dis-

trict court therefore lacked jurisdiction. The district court overruled Corwell's objection on October 30, 2006, stating:

> The clear purpose of [the Act] is to provide relief for persons who are the victims of violence in intimate relationships. The clear intention of the legislature is that those purposes be applied broadly. Those purposes are not served by reliance on the legal fiction that the parties were never married due to the annulment. The fact that they once had the status of a married couple is sufficient to confer jurisdiction under the Act.

Corwell appeals.

## ISSUE AND STANDARD OF REVIEW

¶6 Corwell argues that the district court should have sustained his objection to the protective order because Hall was not his cohabitant as defined in the Act.[2] Corwell's argument presents a question of law that we review for correctness. *See Keene v. Bonser*, 2005 UT App 37, ¶¶ 4–5, 107 P.3d 693.

## ANALYSIS

¶7 This appeal presents a rather narrow question: When cohabitant status under Utah's Cohabitant Abuse Act is premised solely on the basis that a petitioner "is or was a spouse of the other party," Utah Code Ann. § 30–6–1(2)(a), does annulment of the parties' marriage preclude a finding of cohabitant status under the Act? Under the circumstances of this case, we determine that an annulled marriage, declared to be void ab initio by the district court prior to the events giving rise to the petition, will not serve to support cohabitant status. Thus, the district court erred when it overruled Corwell's objection to the protective order entered in this case.

---

2. Corwell also argues that the district court erred in failing to hold a hearing on his objection to the protective order, *see* Utah Code Ann. § 30–6–4.3(1)(e) ("If the hearing on the petition is heard by a commissioner, either the petitioner or respondent may file an objection within ten days of the entry of the recommended order and the assigned judge *shall* hold a hearing within 20 days of the filing of the objection." (emphasis added)). In light of our resolution of Corwell's appeal on other grounds, we do not address this argument. However, were we to reach the issue, we would likely agree with our dissenting colleague that Corwell timely requested a hearing; that he did not waive that request by filing a notice to submit to decision; and that he was therefore entitled to a hearing pursuant to Utah Code section 30–6–4.3(1)(e), *see id.*

¶ 8 In order to seek protection under the Act, a petitioner must be a cohabitant of the respondent as defined in the Act. *See id.* § 30–6–2 ("Any cohabitant who has been subjected to abuse or domestic violence, or to whom there is a substantial likelihood of abuse or domestic violence, may seek an ex parte protective order or a protective order in accordance with this chapter....."). The Act defines a cohabitant as

> an emancipated person ... or a person who is 16 years of age or older who:
>
> (a) is or was a spouse of the other party;
>
> (b) is or was living as if a spouse of the other party;
>
> (c) is related by blood or marriage to the other party;
>
> (d) has one or more children in common with the other party;
>
> (e) is the biological parent of the other party's unborn child; or
>
> (f) resides or has resided in the same residence as the other party.

*Id.* § 30–6–1(2). It is undisputed that the only possible ground upon which Hall could be deemed a cohabitant of Corwell under the statutory definition is that Hall "is or was a spouse" of Corwell. *Id.* § 30–6–1(2)(a).

¶ 9 Hall urges us to uphold the district court by applying an expansive reading of the Act's definition of cohabitant. There is some support for Hall's argument in our case law. As this court has previously stated, the Act's purpose is "to create a timely and simplified process whereby some level of protection and safety [can] be afforded to victims who [have] previously been outside the umbrella of orders available to persons involved in criminal prosecutions." *Bailey v. Bayles,* 2001 UT App 34, ¶ 11 n. 4, 18 P.3d 1129. And, we have noted that "[o]ther states have recognized the expansive reach intended by legislatures in enacting domestic violence and abuse statutes." *Keene,* 2005 UT App 37, ¶ 15, 107 P.3d 693.

¶ 10 Nevertheless, we cannot agree with the district court that the parties' annulment is irrelevant to whether they can be deemed former spouses for purposes of the Act. Unlike the co-residency prong of section 30–6–1(2) that we analyzed in *Keene,* marital status presents largely a legal question rather than a factual one. *See* Utah Code Ann. § 30–6–1(2)(f); *Keene,* 2005 UT App 37, ¶ 12, 107 P.3d 693 ("Under the view we take of subpart (f) of the Act's definition of 'cohabitant,' a court must make a factual determination, on a case-by-case basis, whether a perpetrator or victim of domestic violence or abuse 'resides or has resided in the same residence as the other party' involved." (citation omitted)). Here, there are no relevant factual disputes in regards to the parties' marriage—it occurred on March 19, 2005 and was annulled and declared void ab initio on March 29, 2006. The question is whether, as a legal matter, a district court's declaration that a marriage is void ab initio precludes a later finding that the parties to the annulled marriage are former spouses for purposes of determining cohabitant status. Under the current wording of the Act, we conclude that it does.

¶ 11 The legal effect of an annulment, which not only terminates a marriage but renders it void from its inception, is well known. *See Ferguson v. Ferguson,* 564 P.2d 1380, 1383 (Utah 1977) (Ellett, C.J., dissenting) ("When a marriage is annulled, there is no marriage and never has been one. It has been void from the beginning, and the status of the plaintiff in this case is the same now as it was prior to her purported second marriage."); *Cecil v. Cecil,* 11 Utah 2d 155, 356 P.2d 279, 281 (1960) ("[I]n the case of an annulment, the judgment is that there was never a valid marriage."); *see also Black's Law Dictionary* 99–100 (8th ed. 2004) ("An annulment establishes that the marital status never existed."). More importantly to the resolution of this case, the distinction between divorce and annulment has previously been made by the legislature, which has demonstrated the ability to expressly account for annulment when it so chooses. *See, e.g.,* Utah Code Ann. §§ 30–1–17.1 (2007) (authorizing and establishing grounds for annulment of a marriage); 30–3–5(9) (2007) ("[I]f the remarriage is annulled and found to be void ab initio, payment of alimony shall resume ....."); 75–2–804(1)(c) (Supp.2007) (defining a divorced individual for purposes of the probate code to include "an individual

whose marriage has been annulled"). If the legislature had intended the "was a spouse" language to be satisfied by an annulled marriage, it could have said so expressly.

¶ 12 We are also unpersuaded by Hall's policy argument. Hall argues that the parties' marriage and their interpersonal problems evidence the type of intimate relationship that the legislature intended to bring within the Act's purview. Even if we were to agree with this premise, we have determined that the legislature's choice to define cohabitancy in terms of a party's prior marriage, without expressly including the otherwise excluded status of annulment, precludes an annulled marriage from serving as the sole basis of cohabitant status. When the legislature has spoken clearly on an issue, we are not free to second-guess its wisdom on grounds of policy. *See World Peace Movement of Am. v. Newspaper Agency Corp.*, 879 P.2d 253, 259 (Utah 1994) ("Only when we find ambiguity in the statute's plain language need we seek guidance from the legislative history and relevant policy considerations."). The legislature's enumeration of certain specific factors that can establish cohabitancy status implies a choice to exclude from the Act's protections those who do not meet the factors. When, as here, no qualifying factor is established, we have no choice but to defer to the legislature even though there may be countervailing policy considerations.

¶ 13 Under the undisputed circumstances of this case, and in the absence of any factual allegation that would establish cohabitancy besides the parties' annulled marriage, the only possible ground upon which Hall could be deemed a cohabitant of Corwell under the Act is if Hall "was a spouse" of Corwell, *see* Utah Code Ann. § 30–6–1(2)(a). But because of the parties' annulment, "there was never a valid marriage" between Hall and Corwell, *Cecil*, 356 P.2d at 281, and thus, Hall cannot now be said to have been Corwell's spouse. We presume that the legislature was aware of this possibility and in-

tentionally chose not to include annulled marriages as grounds for cohabitant status under the Act.[3] Accordingly, absent some other basis to establish cohabitancy, Hall cannot be deemed to be a cohabitant of Corwell under the Act and the district court should have sustained Corwell's objection to the protective order.

## CONCLUSION

¶ 14 We conclude that, under the circumstances of this case,[4] Hall and Corwell's annulled marriage does not give rise to cohabitant status under the Act. Accordingly, the district court erred when it overruled Corwell's objection to the protective order entered below solely on the basis of that annulled marriage. We reverse the order of the district court and remand this matter for further proceedings consistent with this opinion.

¶ 15 I CONCUR: JAMES Z. DAVIS, Judge.

BENCH, Judge, (dissenting):

¶ 16 The majority asserts that this case can be decided from the plain meaning of the language of the Cohabitant Abuse Act. I agree. But the plain language of the Act does not support the majority's result.

¶ 17 The Act unambiguously defines a cohabitant as including a person who "is or was a spouse of the other party." Utah Code Ann. § 30–6–1(2)(a) (2007). The plain language of the Act, without qualification, applies to persons who were at any time married. There is no question that the parties in this case were married, and the language of the Act does not treat parties whose marriages ended in annulment any differently from parties whose marriages ended in divorce. The Act, by its own terms, covers all spouses and former spouses. While there are exceptions to the Act's ability to classify persons who otherwise would be considered

---

**3.** We note that in the vast majority of annulment cases, the parties will continue to be deemed cohabitants under the Act because they will have lived as if they were spouses or resided together, or may have children together. *See* Utah Code Ann. § 30–6–1(2)(b), (d), (f).

**4.** We note that in this case both the petition for protective order and the events giving rise to that petition occurred after the annulment of the parties' marriage. We express no opinion as to the result if either the petition or the underlying acts predated the entry of annulment.

cohabitants as such, an exception for former spouses who have ended their marriages in annulment is not included. *See id.* § 30–6–1(3). In my view, the plain language of the Act granted the district court jurisdiction to enter a protective order against Mr. Corwell because he is in fact a former spouse of the complainant.

¶ 18 At worst, the statute is ambiguous and could support either my reading or that of my colleagues. If the statute is ambiguous, then as the main opinion admits, we must consider the purpose of the Act to ascertain the legislative intent. "The purpose of the Cohabitant Abuse Act was to create a timely and simplified process whereby some level of protection and safety could be afforded to victims who had previously been outside the umbrella of orders available to persons involved in criminal prosecutions." *Bailey v. Bayles*, 2001 UT App 34, ¶ 11 n. 4, 18 P.3d 1129. The majority has reproduced the trial court's insightful analysis of the instant circumstances in the main opinion, and I believe that the trial court's jurisdictional analysis is in line with our previous stance on the proper application of the Act. *See id.* The Act is in place to provide speedy protection to victims like the complainant here. She, as a former spouse of Mr. Corwell, is someone who may not have qualified for the benefits of a protective order before the Act became effective. Therefore, even if the language of the Act itself could be considered ambiguous, the district court still had jurisdiction to enter a protective order against Mr. Corwell.

¶ 19 If Mr. Corwell is subject to the Act, and I believe he is, then we must consider his argument that the trial court erred by not holding a hearing as Mr. Corwell requested. "If the hearing on the petition [for a protective order] is heard by a commissioner" and either party "file[s] an objection within ten days of the entry of the recommended order," then "the assigned judge *shall* hold a hearing within 20 days of the filing of the objection." Utah Code Ann. § 30–6–4.3(1)(e) (emphasis added). The holding of a hearing is therefore mandatory once either party files objections to the commissioner's recommended order. No such hearing was ever held in this case, despite Mr. Corwell's objec-

tions. Further, Mr. Corwell did not waive his statutory right to a hearing by filing a Notice to Submit for Decision some five months after the hearing should have been held. I would therefore remand this matter to the trial court for a hearing on the merits of whether, under conditions set forth in the Act, Mr. Corwell should have had a protective order entered against him.